Crane v. Peer.

TIMOTHY W. CRANE et al.

v.

AUSTIN E. PEER.

The presence, in a written contract, of a provision for liquidated damages in case of its breach, does not, of itself, necessarily render the contract an alternative one, nor give to the party bound the option to pay the damages and break his contract.

On pleadings and proofs heard by Henry C. Pitney, Esq., advisory-master.

For several years before January 5th, 1885, the defendant had been engaged in the boot and shoe business in a store occupied by him in Montclair, and had established a trade there. On that day the parties entered into an agreement, under seal, by which the defendant agreed to sell, and the complainants to purchase, the defendant's stock in trade and fixtures at a valuation, and to make payment therefor in a particular manner by or before the 16th day of the same month, under a penalty of $100.

The agreement also contained the following clause, which has given rise to this controversy:

"It is further agreed by the parties hereto that the said party of the first part [Peer] shall not be directly or indirectly interested in any store for the sale of boots and shoes in the township of Montclair, within five years from the date of this agreement, under a penalty of $500."

The agreement to purchase was carried out, and complainants took possession of the store and have since carried it on.

On Wednesday, February 24th, 1886, defendant notified the

complainants that he intended to start a boot and shoe store in a building lately occupied for that purpose by one Bayley, on the same street, and a few doors distant from complainants' store. On the same day he purchased Bayley's fixtures, took a lease of the store, and, on the same afternoon, commenced to purchase stock in New York city. The stock began to arrive on Thursday or Friday, and defendant got out and distributed hand-bills stating that the store would be open on Saturday, the 27th.

On that Saturday complainants consulted counsel and placed the matter in his hands. The bill herein was prepared on Monday, March 1st, and filed on Tuesday, March 2d, on which day the vice-chancellor advised an order to show cause why an injunction should not issue, returnable March 8th, which was served on the defendant the same evening. Between that day and the 8th, defendant made repeated tenders to complainants and their counsel, first of the sum of $500, and then of the sum of $550, adding $50 to cover costs &c., in payment and satisfaction of the sum mentioned as a penalty in the agreement.

Complainants refused to accept it. On the 8th of March the offer was repeated before the vice-chancellor, who, nevertheless, ordered an injunction to issue.

An answer and cross-bill was filed March 19th, and a replication by way of answer to the cross-bill on April 12th, on which day and the following the cause was heard upon pleadings and oral evidence before the advisory master.

The offer to pay the $500 and all costs was repeated before the advisory master, and declined by the complainants.

*Messrs. Whitehead & Gallagher*, for complainants.

*Mr. F. W. Stevens* and *Mr. Austin Van Gieson*, for defendant.

THE MASTER.

The power and duty of the court, in a proper case, to enjoin the breach of a covenant in restraint of trade is well settled, and was not disputed by the defendant.

The defence relied upon in the answer and at the hearing is two-fold:

*First.* That the complainants are estopped by what occurred on February 24th from resorting to equity, and are confined to their remedy at law to recover $500.

*Second.* That by the true construction of the clause of the agreement in question, the defendant had the right, if he chose, to pay the $500, and to resume business.

*Third.* And, in case of failing in both of those defences, defendant, by his cross-bill, sets up that the intention of the parties was that the agreement should be in the alternative, and that the defendant should have the right to commence business upon payment of said sum, and prays a reformation in that respect.

I will consider these defences in the order above stated.

*First,* as to the estoppel. I do not think the rights of the parties were affected by anything that occurred at the interview of February 24th, 1886.

In considering this question of estoppel, we must, of course, assume that, by the true construction of the agreement, complainants are entitled to their choice of remedies, either in equity by injunction, or at law to recover the $500, as liquidated damages, for it is against the equitable remedy that the estoppel is set up.

It follows that the defendant must prove either that the parties, on the 24th of February, made a new contract, or that the complainants consented to his opening his store under such circumstances that it would be inequitable for them to withdraw their consent.

The circumstances of the interview were the following: Defendant had submitted the agreement to counsel, and had obtained his opinion upon it, and called upon the complainants for the purpose of settling, and compromising the matter by procuring the complainants' consent to his starting business by the payment of a less sum than $500, and he made an offer of what he says amounted to $125 to the complainants to procure such consent, which complainants declined.

There is evidence to the effect that the complainants said they would not take less than the $500 mentioned in the agreement, and it is contended that this was said in such connection as to

amount to an offer to accept that sum, and to consent to the defendant's proposed enterprise. But if it may be reasonably inferred, from the evidence, that complainants did make such offer (which I by no means, concede), still, it is beyond dispute that defendant did not accept it, and that no new bargain or modification of the contract was made that day, or at any other time before the bill was filed.

It is admitted that at or near the end of the interview, when asked by defendant what they proposed to do, complainants said they intended to stand by the contract, and that the defendant had no right, under any circumstances, to start again in his old business in Montclair.

Further, I did not understand defendant to pretend, on the stand, that he was at all influenced in his subsequent conduct by what passed on the occasion in question.

*Second*, this brings us to the principal question in the cause, viz., the construction of the contract.

Defendant contends (1) that, notwithstanding the language used is that of penalty, the subject matter and context lead to the conclusion that the parties intended that the sum named should be considered as liquidated damages; citing, in support of his position, the leading case of *Sainter* v. *Ferguson, 7 M., G. & S. 716*, and the other cases following in that line; and contending further (2) that, as a necessary consequence of the establishing of this first proposition, the contract must be construed as an alternative one, under which the party assuming the obligation in restraint of his action has the right, at his option, to pay the sum so fixed, and free himself from the restraint, and that the party to be protected by the restraint agrees and consents that, upon payment of the sum fixed, the restraint shall be removed.

I am unable to assent to this latter proposition, and therefore do not think it necessary to determine the question of penalty or liquidated damages. I think that the question of alternative contract or not is to be determined in this, as in all other cases, by a consideration of the language of the contract and subject matter, and by determining therefrom what was the real intention of the parties as expressed by them. Did the parties intend to

give to the defendant the privilege of doing one of two things—on the one hand, to abstain from going into business, and, on the other, to go into business and pay $500? If so, then the going into business is not a breach of the covenant, nor in any sense a wrongful act. Or did the parties intend to prohibit absolutely the doing of the act in question, and fix the sum mentioned as damages, to be paid for the injury to result from a disregard of the restriction? If so, then the doing of the act is wrongful, and a breach of the covenant.

I am unable to see how the mere circumstance that the parties have agreed upon, liquidated and fixed the sum to be recovered as damages for the doing of a forbidden act renders that act any the less a forbidden act, and therefore wrongful.

Mere liquidation and ascertainment in advance of the damages to be sustained does not necessarily alter their nature, or render them any the less " a compensation awarded by law for the injury sustained by the doing of a wrongful act."

Mr. Sutherland, in his book on Damages, vol. 1 p. 90, uses the following language: " Damages are not the primary purpose of contracts, but are given by law in place of, and as a compensation and equivalent for, something else which had been agreed to be done, and has not been done."

And if A promises B that he will not do a certain act which will be injurious to B, and, by way of insuring B that he will not do it, further agrees that if he breaks his promise he will pay B a sum of money agreed upon as damages for the injury to result to B therefrom, I do not see how the acceptance of such a promise by B amounts to consent on B's part to the doing of the injurious act upon payment of the agreed damages.

I am aware that there are judicial *dicta* of great weight, and expressions by distinguished commentators which tend to support in some measure the view contended for by the defendant.

In *Whitfield* v. *Levy, 6 Vr. 149*, Mr. Justice Depue, at page 153, says: " *In a court of law, in an action to recover damages,* there is no distinction which can be supported on principle between agreements for liquidated damages and alternative contracts." The italics are my own.

Mr. (now Lord Justice) Fry, in his book on Specific Perform-
ance § 67, says: "The question always is, What is the agree-
ment? Is it that one certain thing shall be done, with a penalty
added to secure its performance, or is it that one of two things
shall be done, namely, the performance of the act, or the payment
of the sum of money? If the former, the fact of the penalty
being annexed will not prevent equity from enforcing perform-
ance of the very thing, and thus carrying out the intention of
the parties; if the latter, the contract is satisfied by the payment
of a sum of money, and there is no ground for equitable pro-
cedure against the party having the election;" and, in his suc-
ceeding sections, seems to assume that a provision for liquidated
damages has the effect of making the agreement an alternative
one, and Professor Pomeroy (*1 Eq. Jur.* § *447*, and *Pomeroy on
Cont.* § *50*) assumes the same position.

But, notwithstanding this array of authoritative expressions, I
feel constrained to say that, in my judgment, the weight of
authority and of reason is the other way.

Most of the English and Irish cases prior to 1842 are collected
and commented upon by Lord St. Leonards in *French* v. *Macale,
2 Dru. & War. 269*.

Among them, *Howard* v. *Hopkyns, 2 Atk. 371*, and *City of
London* v. *Pugh, 3 Bro. P. C. 374*, are worthy of notice.

In *French* v. *Macale* the bill was filed, as here, to restrain a
breach of covenant. The defendant covenanted "not to burn or
bate the demised premises [presumably turf], or any part
thereof, under a penalty of £10 per acre, to be recovered as the
reserved yearly rent for every acre burned."

It will be seen that this language is equally as capable of being
considered as providing for liquidated damages as that in the case
in hand, and Lord St. Leonards did not hold that it was not a
case of liquidated damages, but intimated the contrary.

Yet, after full consideration, he refused to dissolve the injunc-
tion, which had been granted by the master of the rolls.

At the hearing, and preliminary to the consideration of the case,
he remarked: "The question is, whether the specification of this
sum of £10 is a waiver altogether of the remedy which the law

Crane *v.* Peer.

gives if a man does what he has covenanted not to do. Now, where a party covenants not to do a certain thing, and then proceeds to say, 'If I do that thing, I will pay you £10 by way of satisfaction,' this agreement does not prevent the court from saying, 'You shall be enjoined from doing that particular thing.'"

And, in delivering his considered judgment (page 274), he says : "The terms of the lease are that the parties will not do the act under a penalty [the very words used here]; therefore, it is a covenant against doing the act, and a. stipulation that, if he shall do it, he is to pay a particular sum per acre."

And, at page 275, after citing several cases, he says : "Now, from all these cases, it appears that the question for the court to ascertain is, whether the party is restricted by covenant from doing the particular act, although, if he do it, a payment is reserved; or whether, according to the true construction of the contract, its meaning is that the one party shall have the right to do the act on payment of what is agreed upon as an equivalent."

And again, at page 284, in conclusion, he says : "Where the covenant is not to do a particular act, and a penalty or forfeiture is annexed to the doing of that act, this penalty does not authorize the party to do this act; and, before the act is done, this court will restrain him by injunction; but, if the act is done, the penalty must be paid, and the amount is unimportant."

This language shows that he considered the case as one in which the party would, at law, recover the whole sum as liquidated damages.

Next, in order of time (1849) to *French* v. *Macale*, comes *Sainter* v. *Ferguson, 1 Macn. & G. 286.* See *13 Jur. 833,* where the facts are more fully stated. The covenant and circumstances there are undistinguishable from those of the present case, and the common law court held the sum mentioned to be liquidated damages.

Complainant, a practicing surgeon, engaged the defendant as his assistant, and defendant agreed that he would not practice &c., under a penalty of £500. Plaintiff discharged defendant from his employment, and defendant commenced practice.

Complainant, in the first instance, filed his bill for an in-

junction, and Vice-Chancellor Knight Bruce declined the injunction, because (as appears by his opinion on the second application) he was not satisfied on one or two questions of fact, but held the bill giving plaintiff leave to bring his action at law to establish his right.

On an appeal from this order refusing the injunction, Lord Chancellor Cottenham affirmed it.

Plaintiff then brought his action at law and succeeded, as reported in *7 M., G. & S. 716.* He then renewed his application for an injunction to Vice-Chancellor Knight Bruce, as reported in *13 Jur. 833,* and was met there with the very same argument that was advanced in behalf of the defendant at the hearing in this case.

That very distinguished judge, in delivering judgment, said: " The question is as to the construction of the agreement and the intention of the parties. I am clearly of the opinion that the plaintiff had the option of forbidding the defendant from practicing at Macclesfield." And, after remarking that he had sent the plaintiff to law, not for the purpose of ascertaining whether the £500 was to be treated as a penalty or liquidated damages, but whether the plaintiff's excuse for discharging the defendant [he had debauched the plaintiff's wife] was true and sufficient or not, he held that the plaintiff had not lost his right to his equitable remedy by going to law, and granted the injunction on terms that plaintiff should not prove in bankruptcy against defendant for the £500.

This judgment, which was clearly according to right and justice, was reversed by Lord Cottenham on appeal, on the sole ground that the action, verdict, and judgment at law were fatal to the plaintiff's remedy in equity.

At page 289 (*1 Macn. & G.*) he says: "It is true that if the plaintiff had seen the difficulty which has since arisen, he might have put the matter so as to have had the option left to him either of exercising his legal right or his equitable remedy, and not to have been precluded from the *alternative which, before the action, he had, either to ask for an injunction or to obtain compensation at law.*"

The pertinency of this language to the present case is apparent.

The next English case in order of time (1854) is *Coles* v. *Sims*, *5 De G., M. & G. 1.*

In that case an *interim* injunction had been granted by Vice-Chancellor Wood (afterward Lord Hatherly), to restrain a breach of a covenant in restraint of building which was "*protected*" by as plain a provision for liquidated damages as could well be contrived. This provision had been overlooked at the hearing before the vice-chancellor, but on appeal it was pointed out and made the principal ground of reversal. The injunction was nevertheless sustained, with the declaration that it would not be considered as the final decision of the question.

Lord Justice Knight Bruce said (page 9): "If I were now deciding the cause, I should probably come to the conclusion that, in a case where a covenant is protected (if I may use the expression) by a provision for liquidated damages, it must be in the judicial discretion of the court, according to the contents of the whole instrument, and the nature and circumstances of the particular instance, whether to hold itself bound or not bound, upon the ground of it, to refuse an injunction if otherwise proper to be granted; and that, in the present case, the circumstances are such as to render it right for the court to grant an injunction."

The next English case is *Long* v. *Bowring (1854), 33 Beav. 585 ; 10 Jur. (N. S.) 668.*

That was a bill for specific performance of an agreement to underlet to the complainant, and to procure a license for that purpose from the superior landlord, with a proviso, couched in the strongest conceivable language, for liquidated damages in the sum of £1,000, to be recovered "as a debt in an action at law."

Lord Romilly, in delivering judgment in favor of the plaintiff for specific performance, says: "I have the strongest opinion as to the construction of this agreement. * * * When Mr. Bowring entered into this agreement with the plaintiffs he might have introduced a clause to the effect that he should be discharged from his agreement, if he thought fit, upon payment to the plaintiffs of £1,000, and, if this had been the meaning of the parties to this agreement, it would have been very easy so to

36

express it.    But I am clearly of opinion that this agreement gives the option to the plaintiffs whether they shall have the agreement specifically performed, or whether they shall be paid £1,000."

The next case is *Howard* v. *Woodward, 10 Jur.* (*N. S.*) *1123; 34 L. J. Ch. 47*, before Vice-Chancellor Wood.

This was a bill, like the one before the court, for a perpetual injunction to restrain a breach of a covenant in restraint of trade [practicing as a solicitor], which was again protected by a provision for the payment of a sum agreed upon as liquidated damages.

Here, again, the point was made that the damages being liquidated gave the defendant the right to practice as a solicitor upon paying the sum fixed.

The vice-chancellor gave judgment for the complainant, saying:    "The question, of course, is whether the agreement is that he may purchase liberty to do the act, or that the act shall not be done at all."    And he held the latter.

To the same effect is *Jones* v. *Heavens, L. R.* (*4 Ch. Div.*) *636.*

Among the cases in this country to which I have been referred is *Gray* v. *Crosby, 18 Johns. 219*, the head-note of which is this : " Where a party to an agreement insists on the payment of stipulated damages as a discharge, it must appear that the damages stipulated are in lieu of a performance of the contract, the payment for which damages is an alternative for his election."

*Ayres* v. *Pease, 12 Wend. 393*, is to the same effect.

Also, *Cartwright* v. *Gardner, 5 Cush. 273, 280, 281.*

A significant case precisely in point, though arising on a question of pleading, is *Stewart* v. *Bedell, 79 Pa. St. 336.*

The head-note is : " The defendant sold his store and good will to the plaintiff, and covenanted not to carry on the same business within a specified district and time; if he should, ' *he shall and will pay* [to plaintiff] the sum of $10,000 *as liquidated damages.*' *Held,* not alternative covenants, the latter being merely the agreed consequence of the breach of the former."

And see the language of the court at page 339.

The rule, as laid down by Judge Waterman in his book on

Specific Performance §§ 21 and 22, is in accord with the view I have taken.

See, also, *1 Suth. on Dam. 471*, where the rule is thus stated:

"*Alternative Contracts.*—These are such as by their terms may be performed by doing either of several acts at the election of the party from whom performance is due. Performance in one of the modes is a performance of the entire contract, and no question of damages arises. Such a contract, therefore, is not one for liquidated damages. * * * *Stipulating the damages and promising to pay them in case of a default in the performance of an otherwise absolute undertaking, does not constitute an alternative contract.* The promisor is bound to perform his contract, though there is generally a practical option to violate it and take the consequence, but he is entitled to no election to pay the liquidated damages and thus discharge himself."

The only case to which my attention has been called, which appears to be in any serious degree opposed to these views, is *Hahn* v. *Concordia Society, 42 Md. 460.* There Hahn (an actor), the defendant, had entered into a contract with the society (a dramatic association), complainant, to perform professionally for it and for no one else, with a provision for the payment of a fixed sum as a fine for a breach. The original contract was in the German language, and the verbiage throughout is peculiar, thus:

"This sum of $200 is already forfeited by any violation of the contract, and requires no particular legal proceedings for its execution."

The Baltimore county circuit court, at the prayer of the society, granted an injunction restraining Hahn from acting except for the society.

On appeal, the only question discussed by counsel was that considered and decided by Lord St. Leonards in *Lumley* v. *Wagner, 1 De G., M. & G. 604,* namely, whether chancery would interfere to prevent a breach of a contract for personal services. But the Maryland court declined to decide that question, and held that the parties to the contract had themselves, by the lan-

guage used, restrained their remedy to an action at law to re-
cover the fine of $200, and on that ground reversed the order of
the court below granting the injunction. No decided cases are
cited, nor any extended reasoning indulged in, in support of the
conclusion arrived at. The court simply construed that contract
standing by itself, and did not rely upon the principle contended
for—namely, that every contract which provides for liquidated
damages for a breach necessarily amounts to an alternative con-
tract, and results in giving an option to the party bound, to per-
form his contract or pay the damages.

Turning therefore, to the language of the present contract and
the circumstances of the case, I come to the very clear and de-
cided opinion that it was not the intention of the parties that the
defendant should have the right to pay $500 and resume busi-
ness within the specified time and limits of territory.

*Third.* This leaves to be considered only the question of re-
formation of the contract.

I do not think that the evidence adduced with that view is at
all sufficient to meet the requirement of the rule in such cases.

. On the contrary, I am inclined to think it rather militates
against defendant's contention. He represented to complainants
that his object in selling out was to quit the business, being com-
pelled thereto by the state of his health, and that he had no de-
sire or intention to ever engage in the business again.

I will advise a decree for a perpetual injunction, upon terms
that the complainants will execute a proper waiver or release of
their right to an action at law to recover the liquidated damages.

NOTE.—Sustaining the advisory-master's views, see *Chilliner* v. *Chilliner,* *2
Ves. Sr. 528; Hardy* v. *Martin, 1 Cox C. C. 26; Fox* v. *Scard, 33 Beav. 327;
Bird* v. *Lake, 1 Hem. & M. 111; Whitney* v. *Stone, 23 Cal. 275; Lyman* v.
*Gedney, 114 Ill. 388; Chamberlain* v. *Blue, 6 Blackf. 491; Hull* v. *Sturdivant,
46 Me. 34; Ensign* v. *Kellogg, 4 Pick. 1; Dooley* v. *Watson, 1 Gray 414;
Hooker* v. *Pynchon, 8 Gray 550; Ropes* v. *Upton, 125 Mass. 258; Daily* v.
*Litchfield, 10 Mich. 29; Gordon* v. *Brown, 4 Ired. Eq. 399; Gillis* v. *Hall, 2
Brews. 342, 7 Phila. 422.* See *Carnes* v. *Nisbett, 7 H. & N. 158, 778; Jones* v.
*Green, 3 Y. & J. 298; Paris Chocolate Co.* v. *Crystal Palace Co., 3 Sm. & Giff.
119; St. Mary's Church* v. *Stockton, 4 Hal. Ch. 520.*—REP.