MAYOR AND ALDERMEN OF THE CITY OF PATERSON v. TOWN OF KEARNY.

Argued February 20, 1913—Decided June 14, 1913.

1. The act of May 1st, 1911, authorizes town councils to acquire water and water rights by condemnation where the town is supplied with water for fire protection and for the use of its inhabitants. *Held,* that a town coming within the provisions of the act may properly proceed to condemn a supply of water, although the intent is to acquire the right to divert water in order that a water company may have the same for the purpose of enabling it to perform its contract to supply the town, provided the town is in a position to use the supply for public purposes after the diversion.

2. Under the act of May 1st, 1911, authorizing towns to acquire water and water rights by condemnation, it is enough that the town has a distributing system so that the water acquired can be made available for the benefit of its citizens whether it owns its reservoirs or not.

3. The necessity of obtaining the approval of the State Water-Supply Commission exists only in the case of a new or additional source of supply and not of a source of supply in actual use in 1907 when the State Water Supply Commission act was passed.

On *certiorari.*

Before Justices SWAYZE, VOORHEES and KALISCH.

For the prosecutor, *John W. Griggs* and *William B. Gourley* (*Edward F. Merrey* on the brief).

For the defendant, *Gilbert Collins* (*Michael T. Barrett, Daniel J. Murray* and *Davis & Hastings* on the brief).

The opinion of the court was delivered by

SWAYZE, J. The objection that the defendant is seeking to condemn land already devoted to a public use is disposed of by our opinion in Paterson *v.* Jersey City. That the town of Kearny was authorized by the act of 1888 to contract with the water companies for a supply of water is settled. *Jersey City* v. *Kearny,* 43 *Vroom* 109. The petition for the appointment of commissioners was presented to Mr. Justice Minturn in July, 1911, and the act of May 1st, 1911, is therefore applicable. That act authorizes the town council to acquire water and water rights by condemnation where the town is supplied with water for fire protection and for the use of its inhabitants, or may determine to obtain or enlarge such supply. Kearny was already supplied with water and comes under this act.

The prosecutor raises the further objection that these proceedings are not within the statutory authority since the object is to authorize the diversion of water by a private water company. This argument is based upon the fact that the evident intent of the town is to acquire the right to divert the water in order that the water company may have it for the purpose of enabling it to perform its contract to supply Kearny. There is no charge of bad faith on the part of the

defendant, and we see no reason to doubt that the real object of the proceedings is to secure a supply of water for the town. If that is not the real object, or if the water is diverted to some other use not authorized, the right acquired will be at an end, just as land reverts to the prior owner when the use for which it is condemned is abandoned. *Slingerland* v. *Newark,* 25 *Vroom* 62, 67. It is necessary, however, that the town should be in a position to use for public purposes the supply after it has acquired the right to divert it. Since the point of diversion at Little Falls is distant from the town there must be some means of conveying the water to the distributing system of the town. We see no reason why the town may not avail itself of the most convenient method. It might, after it had acquired the right to divert, pump or otherwise convey the water in barrels or tank cars, as is sometimes done with oil, and so transport it; but surely it is under no obligation to adopt that expensive method when a pipe line is available. In effect, as counsel for defendant argues, the diversion is a diversion by the municipality. No actual diversion takes place except as the municipality uses the water. It can make no difference to the prosecutor that the result is that the damages which the town might recover of the water company for breach of contract are thereby minimized, or that perhaps the right of the town under the contract to so much water is abandoned for its right under a new contract to have the water company pump and transport the water. That is a matter between the town and the water companies. It is argued that the statutes can only apply to municipalities that have water works for which water and water rights would be necessary. That may be granted without conceding that anything more than a distributing system is required. If the municipality has a distributing system so that the water and water rights which it acquires can be made available for the benefit of its citizens, it can make no difference whether it owns its own reservoirs or not. It must be enough that it owns its distributing system. To force municipalities, which are as close together as they are in the Passaic valley, to have each its own

pumping station, its own reservoir, and its own pipe line from Little Falls to the municipal boundary, would be to compel a useless waste of public money. Harrison, Kearny and East Newark, for example, are virtually one compact city. We find nothing that would forbid them to have a common pipe line and a common reservoir. If they may do this, the means by which they may accomplish the end is not material, even though that means is the selection of a water company as their common agent.

The objection that the approval of the state water-supply commission has not been obtained is untenable. The act creating that commission applies only to the acquisition of a new or additional source of water-supply. The source of supply now sought to be condemned is the same that was in actual use in 1907, when the State Water-Supply Commission act was passed. It was the actual source of supply that was contemplated by the statute, not as the prosecutors argue, a source definitely fixed as the one from which the municipality must perforce obtain its supply. The object of the statute was to prevent further diversion from sources not then in use, without the approval of the state board. Different language would have been used if it had been intended to protect only those municipalities which had a legal right to a specified source. The evident intent was to protect municipalities in their then existing rights to a supply of water whether obtained by contract with a water company or by ownership of the source of supply.

The proceedings are affirmed, with costs.