BERNHARD MEYER et al.

*v.*

THE SOMERVILLE WATER COMPANY et al.

[Submitted November 20th, 1913.   Decided January 22d, 1914.]

1. In absence of a declared intention, or acts indicating such intention, the law will presume that defendant intends to adopt a lawful course of conduct, and intends no invasion of complainants' rights, so as to make injunctive relief appropriate.

2. If defendant asserts that he does not intend to infringe a certain right, and there is no evidence of such intention by him, the court will not interfere by injunction ; but the court is not bound to accept defendant's denial of a wrongful intention, unless the evidence shows that such denial is true, provided defendant has not previously .offended.

3. To authorize either an interlocutory or final injunction, the court must be reasonably satisfied that defendant actually intends to do the act sought to be enjoined, or that there is probable ground for believing that the act will be done, and, in absence of such intention, the mere fact that the injunction will do no harm is not ground for granting it ; but an injunction will not issue merely to allay plaintiff's apprehensions, if there is no reasonable ground for believing that defendant is about to commit wrongful acts.

4. Since the service of written notice upon water companies warning them not to extend their pipe line so as to interfere with complainants' riparian rights would negative any · possible future charge of laches or acquiescence by complainants on application to condemn their property, an injunction will not be granted against the water companies for that

purpose where they are at this time threatening no interference with complainants' rights.

5. A *de facto* municipality may give the consent required by *P. L. 1876 p. 318*, as amended by *P. L. 1880 p. 273 (3 Comp. Stat. 1910 p. 3636 § 631)*, requiring the written consent of the municipality proposed to be supplied with water by a water company organized under the act to be filed with the secretary of state.

6. Riparian owners whose water rights are not yet threatened by a water company cannot enjoin the water company from laying its mains, &c., under a contract between it and several other water companies for furnishing water to a town, on the ground that the contract and the laying of the water mains through the town was *ultra vires*, since that does not concern complainants.

7. A court of equity cannot enjoin a city from granting permission to a water company to lay a main on improved or state roads in the absence of a showing that complainants' legal rights are threatened, even though such permission would be improper.

---

On final hearing on pleadings and proofs.

*Mr. Edward P. Johnson, Jr.,* and *Messrs. Collins & Corbin,* for the complainants.

*Mr. Clarence E. Case, Mr. Frederic J. Faulks* and *Mr. John A. Frech,* for the defendants.

BACKES, V. C.

The defendant Somerville Water Company is supplying water to Raritan and Somerville, and to residents along certain roads leading from these towns. The water is obtained from the Raritan river, at Raritan, of which the complainants are lower riparian owners. The average flow of the river during nine months of the year is about two hundred and fifty million gallons per day, and the low-water flow is sixty-one million gallons. At a point about three miles above the defendant's works the river is dammed and the water diverted into the canal of the Raritan Water Power Company, which extends down to the defendant's plant and supplies various factories with power. The capacity of the canal is equal to the ordinary flow of the river, which is eventually restored to the bed at and above the defendant's pumping station. The defendant withdraws ap-

proximately two million gallons of water per day to supply Raritan and Somerville. On May 1st, 1907, a four-party contract was entered into by the Somerville Water Company, Piscataway Water Company, Raritan Township Water Company and Elizabethtown Water Company, wherein it is recited, "Whereas the said Somerville Water Company is the owner of a large supply of pure and potable water, and is desirous of selling such water to the extent hereinafter provided," and whereby the defendant agreed to furnish and supply to the Piscataway company at a point (not fixed) in the boundary line between the township of Bridgewater and the township of Piscataway (boundary line between Somerset and Middlesex counties), pure and potable water, of a quantity to be regulated by the requirements of the Piscataway company, which requirements included the obligation imposed upon that company by the contract to in turn furnish water to the Raritan company, but which

"shall not at any time exceed such quantity of water as the said Somerville company may lawfully draw from its present or future sources of supply, less such quantity as the Somerville company may, from time to time, require to supply water to the said towns of Somerville and Raritan and the inhabitants thereof, and shall not at any time exceed twenty million (20,000,000) gallons a day."

Subject to the above limitation, the Piscataway company agreed to deliver to the Raritan company not more than nineteen million gallons a day, and the Raritan company agreed to furnish to the Elizabethtown company not less than eighteen million gallons a day. Each company was, at its own cost, to lay mains within its territory for conveying the water, the delivery of which was to begin on the 1st day of January, 1909, and to continue for ninety-nine years. The four companies are owned or controlled by a single interest and managed by boards of interlocking directors. Avowedly, for the purpose of fulfilling its part of the contract, the defendant, in 1910, laid a thirty-six inch main from its pumping station, skirting Raritan, to Somerville, in all, about five thousand six hundred feet, when it was stopped by the authorities of that municipality. *Somerville Water Co.* v. *Somerville, 78 N. J. Eq. (8 Buch.)*

*199.* This main is now being used as an auxiliary to the defendant's Somerville water system. Some of the other companies have laid complementary mains, as required of them by the contract. The defendant obtained from the board of freeholders of Somerset county permission to lay its main in an improved or state road, to a point near Bound Brook, and there was pending before that body at the time the bill was filed, an application to extend this permission from thence to the county line. On March 14th and 16th, 1911 (the bill was filed March 23d), the complainants gave notice, in writing, to the defendant of their rights as riparian owners, and cautioned it against taking or diverting any of the waters of the river above their property, other than was necessary and proper for the use of Raritan and Somerville, and not to enlarge its pipes or plant or to do or cause or permit to be done any acts or work looking to such taking or diversion. The defendant, in its answer and by its officers and other witnesses at the hearing, and through its counsel, in argument, concedes the complainants' usufructuary rights in the waters of the river, as asserted by them in their bill, and protests that it never had claimed or now claims to have any right therein (except for supplying Somerville and Raritan), or that it has any purpose or ever had any purpose of taking any of the waters to fulfill the four-party contract, without first acquiring, as against the complainants, a right so to do either by purchase or condemnation. Upon this state of facts, and because of alleged non-existence of corporate powers in the defendant, to which I shall presently allude, the complainants claim that they are entitled to the protection of this court against an invasion of their riparian rights by the defendant, and ask that such invasion and the further laying of the thirty-six inch main or the laying of any mains in Somerville or Raritan, disproportionate to the needs of these towns for thirty years to come, be perpetually restrained; and in their brief insist upon the removal of the mains already laid to insure absolute security.

(1) The evidence does not show that the defendant's acts threatened an imperilment of the complainants' property, or that the complainants were reasonably apprehensive that they

would. The enormous outlay of money by the four companies in constructing the thirty-six inch main, before first acquiring a water-supply or right thereto from the lower riparian owners and from the state through the water-supply commission (*Comp. Stat. 5798*), was at their hazard. It may have been an unwise and possibly a reckless venture, but it was undertaken, in subordination to the terms of the contract, which expressly stipulated that the water which the defendant agreed 'to sell to its co-contractors,. was to be only such as could be lawfully taken from its present or future sources of supply, and of this the complainants had ample information. The laying of the main, considered in the light of the contract, spelled a lawful enterprise and far from indicated an intent to · wrongfully invade the complainants' rights. There was at the time of the filing of the bill no obscurity concerning these rights. They had been clearly defined and established by this court and the court of errors and appeals in *Paterson* v. *East Jersey Water Co., 74 N. J. Eq. (4 Buch.) 49; 77 N. J. Eq. (7 Buch.) 588; Wilson, Attorney-General,* v. *East Jersey Water Co., 78 N. J. Eq. (8 Buch.) 329.* This, and the notices given by the complainants to the defendant of their property in the river, and the implied forewarning that they purposed to protect it against intrusion, evinces that both parties were keenly sensed of the other's legal rights, and it is to be assumed that the defendant meant to respect those of the complainants. There is no evidence of an expressed threat by the defendant, and the record is silent as to what response, if any, it made to the written notifications. No declaration of its intention was sought by the complainants before coming into court. In this situation the law presumes a policy of lawful conduct on the part of the defendant toward the complainants and coupled with the defendant's unqualified disavowal and disclaimer of any rights in the water of the river, other than for supplying Raritan and Somerville; its emphatic and unequivocal denial of any intent, past, present or in the future, to take these waters without lawful right first acquired from the complainants by purchase or against them by condemnation, manifestly renders interference by injunction inappropriate at this time. The denials and disclaimers were

made by the president, treasurer and a director of the defendant —gentlemen of high standing, good repute and unimpeached integrity. Where a defendant asserts positively that it is not his intention to do a certain act or to infringe a certain right, and there is no evidence to show any intention on his part to do the act or infringe the right, the court will not interfere. *Kerr Inj.* *13; *Whalen* v. *Dalashmutt, 59 Md. 250.* The court is not obliged to accept the denial of the defendant. *Fleckenstein* v. *Fleckenstein, 53 Atl. Rep. 1043.* But it ought to, when the evidence satisfies, as it does in this case, that the denials speak the truth. Of course, if a defendant has once offended, the rule does not obtain. *Beach* v. *Sterling Iron and Zinc Co., 54 N. J. Eq. (9 Dick.) 65.* To justify the court in granting the relief, it must be reasonably satisfied that there is an actual intention on the part of defendant to do the act which it is sought to enjoin, or that there is probable ground for believing that, unless the relief is granted, the act will be done. And it is not a sufficient ground for interfering that, if there be no such intention on the part of defendant, the injunction can do no harm. Nor will the court interfere when the evidence shows that there is no probability of defendant doing the act which it is sought to restrain. So the relief will not be granted unless the injury to the plaintiff is threatened or imminent or is in all probability about to be inflicted, and the writ will not issue merely to allay the fears or apprehension of the plaintiff where there is no showing or reasonable ground for believing that the defendant is about to commit the wrongs complained of or where it appears that he is without the opportunity or intention of so doing. *High Inj. (4th ed.) § 22.*

(2) The complainants' argument in justification of its course in resorting to this court at this time, is that it was necessary so as to prevent an adverse use ripening into a vested right; to preserve their legal status, so as to resist condemnation proceedings, and to avoid a future charge of acquiescence which might lead to compelling them to give up their water rights for such compensation as the court might fix, as was done in *Simmons* v. *Paterson, 60 N. J. Eq. (15 Dick.) 385,* and in *New York City* v. *Pine, 185 U. S. 93.* The last reason only need be

considered. The defendant was not persuaded by any induce-
ments held out by the complainants to make the expenditures
for the laying of the thirty-six inch main. This was done en-
tirely at the defendant's risk. The complainants were vigilant
in protesting, and it is inconceivable how, under these circum-
stances, they could be charged with acquiescence. The serving
of the written notices raised an effectual bar against a claim of
laches, and they could safely have, and should have, waited
until the defendant threatened a trespass upon their interests.
*Paterson* v. *East Jersey Water Co., supra.* Inquiry might have
brought further assurance.

(3) It is claimed that the defendant has not the power of
condemnation. The defendant was incorporated on, and has
been operating since, June 15th, 1881, under the provisions of
the act of April 21st, 1876 *(Comp. Stat. p. 3635),* which, as it
stood amended at that time *(P. L. 1880 p. 273),* authorized the
formation of water companies for the purpose of constructing
water works

"in any city, town, village or seaside resort in this state, having a popu-
lation of not more than fifteen thousand and not less than five hundred
inhabitants, and for the purpose of supplying  *  *  *  the inhabitants
thereof with water."

The defendant's certificate of incorporation states that its
purpose is to construct, maintain and operate water works in
the town of Somerville and also in the adjoining town of Rari-
tan for the purpose of supplying both towns and the inhabitants
thereof with water. The restrictive language of the act raises
a very grave doubt as to whether one company may be formed
to operate water works in two or more of the class of towns
*(Somerville Water Co.* v. *Somerville, supra),* and consequently
as to the right to condemn. *Hampton* v. *Clinton, 65 N. J. Law
(36 Vr.) 158; Manda* v. *Orange, 75 N. J. Law (46 Vr.) 251;
Sisters of Charity* v. *Morris Railroad Co., 82 N. J. Law (53
Vr.) 214.* In this connection the constitutionality of the acts
under which Somerville and Raritan were formed *(P. L. 1863
p. 479; P. L. 1868 p. 776)* is assailed to furnish grounds for
the contention that Bridgewater township, in which the towns

are located, was the municipality to give the consent required
by section 2 of the act under which the defendant was incorpo-
rated.   The point was feebly asserted on the argument, and if
it has merit, it cannot avail the complainants because, as I ap-
prehend, a *de facto* municipality may give the consent.  *Lang*
v. *Bayonne, 74 N. J. Law (45 Vr.) 455.*  It was also urged that
the defendant had not procured from the state water-supply
commission approval of its plans for any new or additional
source of water-supply to meet the requirements of the four-
party contract.   *Comp. Stat. p. 5798.*   None of these grounds
of attack upon the defendant's right of eminent domain affected
the defendant's right, as against the complainants, to enter
into the four-party contract or to lay the thirty-six inch main,
and they afford the complainants no substantive cause for com-
plaint.   The only bearing they now have is upon the integrity
and good faith of the defendant's denial of intent to intrude
upon the complainants' water rights, and as to this, it may be
suggested that at the time the contract was made, and the main
laid by the defendant, its lack of power to condemn was a mooted
question which was then, it is said, not called to its attention.
The point was raised afterwards in the *Somerville Case.*   More-
over (the defendant's right to supply Somerville and Raritan
from its present source, being admitted), the municipalities
which the four-party contract is intended to serve with water,
may have the right to condemn.   *Slingerland* v. *Newark, 54 N.
J. Law (25 Vr.) 62; Paterson* v. *Kearny, 87 Atl. Rep. 103.*
And this power, it is claimed, is possessed by the co-contractors.
*Paterson* v. *West Orange Water Co., 87 Atl. Rep. 104.*   See,
also, *Paterson* v. *East Jersey Water Co., supra* (at *p. 103*).   The
defendant has also in contemplation plans for the storage of
freshet waters gathered from tributaries of the Raritan, to be
let down the river during dry spells, to compensate for whatever
may be withdrawn or to be conveyed by pipes, gravitationally,
to its pumping station.   Under either method, condemnation
of the complainants' water rights, of course, would be necessary.
*Sparks Manufacturing Co.* v. *Newton, 57 N. J. Eq. (12 Dick.)
367.*   But the scheme appears to be so extravagant that it may
be dismissed as only a very remote possibility.

(4) It is also argued that the defendant not having a legal corporate existence, due to the defects mentioned, the four-party contract and the laying of the thirty-six inch main through Somerville, of a size greatly in excess of the present or far-future needs of that town (*Bayonne* v. *North Arlington, 78 N. J. Eq. (8 Buch.) 283*), are *ultra vires* the defendant, and that the latter should be restrained and abated and the extending of the main to the Somerset county line should be enjoined. The contract was authorized by act of April 8th, 1903. *P. L. 1903 p. 237; Comp. Stat. p. 3641.* This phase of the case may be disposed of by the observation that the complainants are not injured thereby, nor are they therein concerned.

(5) It is further insisted that the defendant has not the right to supply water to dwellers along roads leading out of Raritan and Somerville, as provided by the act of March 23d, 1883. *P. L. 1883 p. 201; Comp. Stat. p. 3641.* An examination of the bill shows that this was not made an issue in the cause.

(6) Throughout, the Somerville Water Company has been referred to as the defendant. The Board of Freeholders of Somerset county was joined as a defendant, with a prayer that it be restrained from granting permission to the Somerville Water Company to lay the thirty-six inch main on the improved or state roads. The board filed a demurrer. The propriety and legality of granting this permission must be threshed out in the law courts. This court cannot interfere. *Van der Plaat* v. *Undertakers' Association, 70 N. J. Eq. (4 Robb.) 116.* The demurrer will be sustained.

The bill will be dismissed, with costs.