This litigation arises from insurance policies written by complainant society upon the life of defendant, Dr. Walter T. Gutowski. On November 28th, 1933, a premium fell due on each policy and remained unpaid for more than the grace period of thirty-one days. The default brought into play a policy provision as follows:
"Upon default, this policy shall lapse and the insurance herein cease, except as stated in the provisions hereof entitled `grace' and `options on surrender or lapse' but it may be reinstated at any time unless the cash value has been duly paid or the period of extended term insurance has expired, upon the production of evidence of insurability, satisfactory to the Society and the payment of all overdue premiums with interest at 5 per cent. per annum and upon the payment with interest or the reinstatement of any indebtedness to the Society, secured thereby." *Page 182 
On January 15th, 1934, a solicitor of the society, Palmisano, called at Dr. Gutowski's office. The latter informed him that he wished to have reinstated two of the policies. Palmisano thereupon figured up the premiums and interest due and filled out a blank request for reinstatement; Dr. Gutowski gave him a check and, without reading and application, signed it. The paper reads in part as follows:
"I hereby certify that I am in good health; that except as stated below, I have had no illness, have not consulted any physician or practitioner, have not been a patient in any hospital or sanitarium, and that there has been no change in the health record of my family, since the issuance of the policy. I hereby agree that if the above numbered policy is reinstated by the Society, such reinstatement shall be based upon the good faith of this declaration, which is personally signed by me; and that the reinstatement if granted shall not take effect until all premiums in arrears, with interest, have been duly paid during my continued good health. Note here any exceptions, including dates and complete details."
No exceptions were noted.
The following day, Palmisano delivered the check and the application at the society's Newark office or agency.
By rule of the society, when a request for reinstatement is received by the Newark agent within twenty days after the expiration of the period of grace, and the application contains no exceptions, the policy may be reinstated by the Newark agent. But if the application shows exceptions to its general statements, then it must be forwarded to the home office for action. And if the application discloses that the insured has been sick or attended by a physician since the policy was originally issued, a new physical examination is required by the society before the insurance will be reinstated.
As Dr. Gutowski's application was received within the twenty-day period and contained no exceptions, the Newark office was authorized to reinstate. The clerk in that office who had charge of these routine matters, on January 17th deposited Dr. Gutowski's check, made out a report for the home office showing reinstatement of the policies, and mailed the premium receipts to Dr. Gutowski. These acts constituted the reinstatement of the policies. *Page 183 
The serious controversy between the parties grows from Dr. Gutowski's statement that he had had no illness and had not consulted any physician since the issuance of the policy. As a matter of fact, this was not true. On October 21st, 1932, he consulted Dr. Albion Christian at the latter's office. The next day, Dr. Christian called on him at his home. October 23d, Mrs. Gutowski, disturbed by her husband's condition, summoned a second physician, Dr. English. He found the patient confined to bed acutely sick and with a high fever. A day or so later, a third doctor was called into consultation and a pathologist came to make tests of blood, urine and spinal fluid. Dr. Gutowski recovered; his physicians found it unnecessary to call after November 2. They diagnosed his illness as grippe; Dr. Christian says grippe of an abdominal type. His condition was aggravated by his fear that he had been infected while treating a meningitis case about the middle of October.
Dr. Gutowski, when applying for reinstatement of his policies, did not disclose this illness — not intentionally, but from neglect. After his recovery from grippe in 1932, his health was good until the day he requested reinstatement of the insurance January 15th, 1935. Two days later, he again became ill, this time from an abdominal ulcer.
Is Dr. Gutowski's false statement ground for annulling the reinstatement of the insurance? As I understand his testimony, he signed the application without reading it and without knowing what representation it contained or else his illness two years before had temporarily escaped his memory. The fact that the doctor chose not to read the paper before signing it, or did not know its contents, cannot relieve him from its obligations. "This doctrine arises from the well settled principle, that affixing a signature to a contract creates a conclusive presumption, except as against fraud, that the signor read, understood and assented to its terms." Fivey v. Pennsylvania Railroad Co.,67 N.J. Law 627; Champlin v. Davis, 94 N.J. Law 523. Defendant expected that the society would reinstate the policies upon his written request and in reliance thereon, it was his duty to read before he signed. "It must be presumed that he read the application *Page 184 
and was cognizant of the limitations therein expressed. New YorkLife Insurance Co. v. Fletcher, 117 U.S. 519.
Dr. Gutowski cannot be heard to say that he did not read the document. Neither can he be aided by his faulty memory. His illness and the attendance on him of three physicians were facts within his knowledge. If they were not in his mind when he signed, he, and not the company, must suffer the result.
But defendant argues that the stipulation contained in the written request — that the reinstatement shall be based upon "the good faith of this declaration" — brings into the situation an element not usually found in fraud cases; that the declaration was made in good faith unless, in very fact, Dr. Gutowski intended to deceive the company. I think the presumptions I have mentioned apply here as to any other case, and establish an intent to deceive, but even if that be not so, good faith required the doctor to read the paper and carefully to search his memory with respect to the declarations contained in it. He knew that the company would rely on the application. Good faith forbade him from doing less.
Defendant further argues that the statement which I have been discussing should not avoid the policy, since it was not made with fraudulent intent and was not material to the risk; that the abdominal grippe of 1932 did not affect the general health of defendant and had no connection with the ulcer of 1935.
By the terms of the policies already quoted above, insured's right to reinstatement was conditioned upon "the production of evidence of insurability satisfactory to the society." The society, in accordance with its own reasonable rules, required that insurability should be evidenced by a new physical examination except in case the insured had had no illness since the issuance of the policy. The entire absence of illness is taken by the society to indicate exceptionally good health and to justify waiving physical examination. If Dr. Gutowski had disclosed his illness from grippe, the society, on receiving the application at its home office on January 17th, would have required a physical examination and at that time Dr. Gutowski was in the hospital. Without doubt, the policies *Page 185 
would not have been reinstated. Even if the examination had been made the day the request was signed, January 15th, the ulcerous condition might have been discovered; no one can tell. The misrepresentation was material.
The reinstatement will be annulled because of the false statements on which it was based. The other questions argued need not be considered.