Neither modern public policy nor the judicial decisions of recent years have disapproved of contracts in restraint of trade between employer and employee where the restraint is reasonably necessary for the protection of the business of the employer and not unreasonably restrictive in point of time or territory upon the rights of the employee. Mandeville v. Harman, 42 N.J. Eq. 185; 7 Atl. Rep. 37; Crane v. Peer, 43 N.J. Eq. 553;4 Atl. Rep. 72; Sternberg v. O'Brien, 48 N.J. Eq. 370;22 Atl. Rep. 348; American Ice Co. v. Lynch, 74 N.J. Eq. 298;70 Atl. Rep. 138; Fleckenstein Bros. Co. v. Fleckenstein, 76 N.J. Law 613;71 Atl. Rep. 265; Owl Laundry Co. v. Banks, 83 N.J. Eq. 230;89 Atl. Rep. 1055; Sarco Company of New Jersey v. Gulliver, 3 N.J.Mis. R. 641; 129 Atl. Rep. 399; affirmed, 99 N.J. Eq. 432;131 Atl. Rep. 923; A. Fink Sons v. Goldberg, 101 N.J. Eq. 644;139 Atl. Rep. 408; Stein v. Kommit, 105 N.J. Eq. 90;147 Atl. Rep. 111; Ideal Laundry Co. v. Gugliemone, 107 N.J. Eq. 108;151 Atl. Rep. 617; Gordon Supply Co. v. Galuska, 113 N.J. Eq. 353; 166 Atl. Rep. 700; Capital Laundry Co. v. Vannozzi,115 N.J. Eq. 26; 169 Atl. Rep. 554; Voices, Inc., v. Metal ToneManufacturing Co., 119 N.J. Eq. 324; 182 Atl. Rep. 880;
affirmed, 120 N.J. Eq. 618; 187 Atl. Rep. 370; The Davey TreeExpert Co. v. Ahlers, 124 N.J. Eq. 175; 200 Atl. Rep. 1012;Abalene Exterminating Co. v. Oser, 125 N.J. Eq. 329;5 Atl. Rep. 2d 738; Vander May v. Schoone-Jongen, 128 N.J. Eq. 336; 16 Atl. Rep. 2d 198; affirmed, 130 N.J. Eq. 227;21 Atl. Rep. 2d 819; Original New York Furriers Co. v.Williams, 133 N.J. Eq. 524; 33 Atl. Rep. 2d 292; IrvingtonVarnish and Insulator Co. v. Van Norde, 138 N.J. Eq. 99;46 Atl. Rep. 2d 201.
The complainant during a span of many years has been engaged in the business of selling clothing at retail and on credit. It conducts its so-called credit stores in several localities. In past years the defendant Solomon has been in the employ of the complainant in various capacities. He was *Page 530 
manager of the store at Manchester, Connecticut, salesman in the store at Bridgeton, New Jersey, following which he served as manager of the store at New Brunswick, New Jersey, where he was engaged when he was inducted into military service in the recent war. Thus he imbibed the involutions of the retail credit business.
Upon his honorable discharge by the military authorities, he tentatively resolved to seek employment with another company, but at an interview with the president of the complainant company he decided to accept from the complainant the position of manager of its store at Bridgeton.
On November 1st, 1943, he executed an employment contract in which the following negative covenants are embodied:
"5. The parties hereto recognizing that the Company's business of sales on credit is based largely on credit information, recorded on various customers lists and statistical data, and other records of the Company acquired, collected and classified as the result of substantial outlay in establishing its business in various places in the United States, including the City of Bridgeton and that the trade and good will of the Company in said place and the vicinity thereof with its customers has been established at substantial cost and effort and that irreparable damage will result to the Company if such lists, records or information are obtained or used by any other person or competitor of the Company, or if said goodwill is diverted from the Company and the said employment being obtained and based upon the trust and confidence reposed by the Company in the Manager with respect to the proper use of such lists, records and information solely for the Company's benefits and recognizing that the giving of such employment efforts (sic) the Manager opportunity of favorable relations with said customers and access to such confidential lists, records, and information concerning the Company's business in consideration thereof and in consideration of the employment obtained by the Manager hereunder, the Manager hereby covenants that in the event of the termination of said employment the manager will not, for a period of two (2) years from the date of such termination, engage in the business of the retail sale of cloaks and suits, or clothing on credit on his own account or become interested in such business directly or indirectly as an individual, partner, stockholder, director, officer, clerk, principal, agent, employe, or in any other relation or capacity whatsoever in the said City of Bridgeton.
"The Manager further separately covenants that for two years after his employment with the Company ceases he will not directly or indirectly solicit, circularize or aid in soliciting or circularizing (generally or specifically) any business relating to the retail sale of cloaks and suits or clothing on credit from any customer or customers and will not deal with or make sales on clothing on credit to *Page 531 
any customers who have within two years prior to the cessation of his said employment dealt with the Company at its said store located at the aforesaid place.
"The Manager further covenants that during the duration of his employment and for a period of two years thereafter he will not at any time, directly or indirectly use or disclose to any persons excepting the Company and its duly authorized officers and employees entitled thereto, the Company's customers lists, credit classifications, records, statistics, or other information acquired by him in the course of his employment in any capacity whatsoever, nor in any manner directly or indirectly aid or be party to any acts, the effect of which will tend to divert, diminish or prejudice the goodwill or business of said store.
"6. The parties hereto, recognizing that irreparable damage will result to the Company, its business and property, in the event of the breach of any of the covenants and assurances by the Manager in Article `5' hereof, and that said employment was granted by the Company primarily in reliance upon the covenants and assurances by the Manager in said article made and evidenced, it is agreed that in the event of such breach or danger thereof, the Company shall be entitled in addition to any other remedies and damages, available to an injunction to restrain the violation by the Manager of such covenants."
The defendant Solomon pursued his employment in the business of the complainant at Bridgeton until February, 1947, at which time he terminated his relationship with the complainant and announced and demonstrably indicated his intention to form an alliance with the defendant Peck, who is a competitor of the complainant at Bridgeton. The intention of the defendant Solomon to disobey the negative covenants of the contract of employment was not denied at the final hearing. Cf. Meyer v. Somerville Water Co.,82 N.J. Eq. 572; 89 Atl. Rep. 545. The complainant consequently solicits the injunctive aid of this court.
The defense is exceedingly frail and infirm. Solomon acknowledges that he executed the contract and that he then inferred that the document related to the terms of his employment, but he declares that he did not read the instrument and was not aware that it contained the restrictive covenants. He does not pretend that he was denied an opportunity to examine the contract nor that its terms and provisions were falsely represented to him. He explains, however, that when he placed his signature on the last page of the written agreement, the president of the complainant, who executed it on *Page 532 
behalf of the company, rested his forearm upon the paper obscuring the view of its contents. Nonsense!
Solomon is an intelligent person of business experience, and he ultimately confessed that he had in his previous engagements with the complainant theretofore signed two other such agreements. He avowed too that he never read the two agreements which he had formerly executed. I cannot in such circumstances attach much credence to his assertions.
The decision in the case of Fivey v. Pennsylvania Railroad,67 N.J. Law 627; 52 Atl. Rep. 472, at once flashes into memory. I turn to page 632 of that opinion and quote: "The fact that the plaintiff did not choose to read the paper, or the material parts of it, before signing, or did not know its contents at the time, cannot, in the absence of actual fraud, relieve him from its obligations. This doctrine arises from the well-settled principle that affixing a signature to a contract creates a conclusive presumption, except as against fraud, that the signer read, understood, and assented to its terms." Accordant decisions:Dunston Litho. Co. v. Borgo, 84 N.J. Law 623;87 Atl. Rep. 334; Champlin v. Davis, 94 N.J. Law 523; 110 Atl. Rep. 921;Diamond Rubber Co. v. Feldstein, 112 N.J. Law 514;171 Atl. Rep. 815; Kearney v. National Grain Yeast Corp.,126 N.J. Law 307; 19 Atl. Rep. 2d 19; Fortunel v. Martin, 114 N.J. Eq. 235; 168 Atl. Rep. 393; Equitable Life, c., v. Gutowski,119 N.J. Eq. 181; 181 Atl. Rep. 636; Metropolitan Life Insurance Co.
v. Lodzinski, 121 N.J. Eq. 183; 188 Atl. Rep. 681; reversed on other grounds, 122 N.J. Eq. 404; 194 Atl. Rep. 79.
Other defensive points of a legalistic nature introduced for consideration on behalf of the defendant Solomon are not meritorious.
The defendant Peck did not undertake to defend himself at the final hearing against the allegations of the bill in their relation to his participation in the apprehended violation of the covenants.
The covenants of the contract appear to be reasonable and not unjustifiably oppressive to the defendant Solomon.
The existing preliminary restraints against the defendants will be made permanent by a final decree. *Page 533