14 N.J. Super. 205 (1951)
81 A.2d 502
JENNIE SILVESTRI, PLAINTIFF-RESPONDENT,
v.
SOUTH ORANGE STORAGE CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 1951.
Decided June 19, 1951.
*207 Before Judges McGEEHAN, JAYNE and Wm. J. BRENNAN, JR.
Mr. Francis Van Orman argued the cause for appellant (Mr. Hugh F. Doherty, attorney; Mr. Augustus Nasmith, on the brief).
Mr. Joseph L. Magrino argued the cause for respondent.
*208 The opinion of the court was delivered by JAYNE, J.A.D.
The stipulation of counsel representing the appellant and the respondent reveals the mutually acknowledged facts which have occasioned the present litigation.
Obviously the transaction to which attention is invited created between the parties the relationship of bailor and bailee. It is within that typical field of the law that the review of the instant case is undertaken. The appellant is not a common carrier of goods. It conducts a storage warehouse at No. 219 Valley Street in the Village of South Orange, New Jersey.
On April 10, 1946, the defendant-appellant submitted to the plaintiff-respondent a memorandum entitled "Storage Proposal" which was executed on behalf of the warehouse company. The plaintiff subscribed her signature to the memorandum beneath the words "Gentlemen: I accept your proposal and the rates and conditions enumerated above."
The proposal so submitted and accepted contained the following:
"Storage subject to conditions named on Non-Negotiable Warehouse Receipt to be issued as follows:

CONDITIONS

* * * * * * * *
Unless a greater value is stated herein, the depositor declares that the value in case of loss or damage, whether arising out of the storage, transportation, packing, unpacking, fumigation, cleaning or handling of the goods, and the liability of the Company for any cause for which it may be liable, for each or any piece or package and the contents thereof, does not exceed and is limited to fifty dollars or for the entire contents of the Van does not exceed and is limited to $2,000 upon which declared or agreed value the rates are based, such depositor having been given the opportunity to declare a higher valuation without limitation in case of loss or damage from any cause which, would make the Company liable and to pay the higher rates thereon.

* * * * * * * *
This contract represents the entire agreement of the parties hereto, and is made with the agreement as to the rates and conditions as enumerated, and only an officer of the Company has the power to modify the terms of this contract, and then only by a writing signed *209 by him; and the Company shall not be bound by any promise or representation at any time made, unless made in writing and signed by one of said officers."
The plaintiff did not declare excess valuation, which she was privileged to do, and retained in her possession a copy of the memorandum to which both she and the company had subscribed.
On April 12, 1946, in pursuance of the agreement executed on April 10, 1946, the company accepted from the plaintiff for storage a number of designated articles of household furniture and furnishings among which was a Westinghouse refrigerator, and issued to her a warehouse receipt in which the above-quoted provisions were also embodied.
On February 7, 1950, the plaintiff signed the order endorsed on the back of the warehouse receipt requesting the return of her goods on March 1, 1950. The company was unable to return the refrigerator. It is conceded that it was lost while in the custody of the company. The plaintiff recovered a judgment in the Essex County District Court for the market value of the refrigerator in the sum of $175 together with interest.
The question introduced for decision by this appeal is whether in the stipulated circumstances of the present case the liability of the warehouse company was limited to $50.
Counsel have somewhat constricted the question by stipulating that although the plaintiff voluntarily signed the so-called proposal, nevertheless the provisions in it and in the warehouse receipt limiting the liability of the company were not "called" to her attention by the representative of the company.
It would be an example of redundance to recapitulate the numerous reported decisions throughout the several jurisdictions concerning the contractual right of carriers and bailees to limit their liability arising out of their failure or neglect of duty.
The courts of our own jurisdiction have adhered to the generally recognized rule that a common carrier and *210 one otherwise occupying the legal status of a bailee cannot so contract as to effectuate a complete exemption from liability for losses proximately resulting from the negligence of the carrier or bailee.
The bailment relation, although it may in some circumstances originate by operation of law, such as the finding of lost goods or the seizure of goods under legal process, is essentially and commonly one of contract.
And so under the terms of the Uniform Warehouse Receipts Act (R.S. 57:1-6) a warehouseman may insert in a receipt issued by him any other terms and conditions, provided such terms and conditions shall not in any wise "impair his obligation to exercise that degree of care in the safe-keeping of the goods intrusted to him which a reasonably careful man would exercise in regard to similar goods of his own." Cf. Atkinson v. New York Transfer Co., 76 N.J.L. 608 (E. & A. 1908).
It is indubitably the law of our State that the parties to a bailment may by means of a so-called special agreement diminish the pecuniary liability of the bailee. Where there is such an express agreement entered into by mutual assent, the terms of the agreement unless otherwise offensive to law or public policy will govern the rights, duties, and liabilities of the bailor and bailee. Lebkeucher v. Pennsylvania Railroad Co., 97 N.J.L. 112 (Sup. Ct. 1922), affirmed 98 N.J.L. 271 (E. & A. 1922).
It may be at once acknowledged that there is an abundance of judicial authority expressive of the conviction that a receipt from a bailee at the time of the bailment which is ostensibly a token for the identification of the entrusted property, such as a check for a parcel left at a parcel stand or a slip for the temporary storage or parking of an automobile, does not bind the bailor to special provisions which are printed thereon purporting to limit the bailee's liability, where the bailor's attention is not invited to them and he has no actual knowledge at the time of the bailment that they are intended to become part of the contract of bailment. *211 A similar course of reasoning is apparent in Hill v. Adams Express Co., 82 N.J.L. 373 (E. & A. 1911), with relation to the issuance of a bill of lading.
It is interesting to observe that there are reported cases in some jurisdictions holding that a warehouse receipt issued in pursuance of the provisions of the Uniform Warehouse Receipt Act and containing permissible limitations of liability is to be given the effect of a contract between the parties and that the bailor is thereby charged with notice and knowledge of all the terms and conditions expressed in the receipt. Typical are Central Storage Warehouse Co. v. Pickering, 114 Ohio St. 76, 151 N.E. 39 (Sup. Ct. 1926), and Colgin v. Security Storage & Van, Inc., 17 So.2d 478 (Ct. of A., La., 1944), which was reversed on this point by the Supreme Court, 208 La. 173, 23 So.2d 36, 160 A.L.R. 1107 (Sup. Ct. 1945).
It is obvious that the rationale of the decisions relating to the absence of notice to the bailor of the special terms of limitation of liability is not applicable to the factual events and circumstances of the present case. In most of such cases the delivery of the property and the issuance of the receipt were contemporaneous; in none had there been prior to the delivery of the goods, as here, an express contract of bailment in writing executed by both parties. Nor is this a case in which the bailee seeks to change the original contract by the subsequent issuance of the receipt.
Here the contract of bailment was express and not implied. It was in writing and executed by the bailor on April 10, 1946. It definitely and specifically set forth the "conditions" of the bailment and apprised the plaintiff that such conditions would be embodied in the receipt to be issued upon the delivery of the articles. The contract was complete in itself before the transfer of the possession of the chattels on April 12, 1946. The contract was independent of the receipt and the latter was issued in pursuance of the contract and in accordance with the contemplations of the parties. Copies of both the accepted proposal, which we recognize as the contract, *212 and the receipt have remained in the possession of the plaintiff without protest or complaint concerning the terms and conditions of the bailment.
But it is asserted that she never read the terms and conditions. Her failure to do so was not induced by any fraud or deception practiced upon her.
Almost a half century ago, our former Court of Errors and Appeals was heard to say: "The fact that the plaintiff did not choose to read the paper, or the material parts of it, before signing, or did not know its contents at the time, cannot, in the absence of actual fraud, relieve him from its obligations. This doctrine arises from the well-settled principle that affixing a signature to a contract creates a conclusive presumption, except as against fraud, that the signer read, understood, and assented to its terms." Fivey v. Pennsylvania Railroad, 67 N.J.L. 627 (E. & A. 1902). Accordant decisions: Dunston Litho. Co. v. Borgo, 84 N.J.L. 623 (E. & A. 1913); Champlin v. Davis, 94 N.J.L. 523 (E. & A. 1920); Diamond Rubber Co. v. Feldstein, 112 N.J.L. 514 (E. & A. 1934); Kearney v. National Grain Yeast Corp., 126 N.J.L. 307 (E. & A. 1941); Fortunel v. Martin, 114 N.J. Eq. 235 (E. & A. 1933); Equitable Life, &c., v. Gutowski, 119 N.J. Eq. 181 (Ch. 1935); Metropolitan Life Insurance Co. v. Lodzinski, 121 N.J. Eq. 183 (Ch. 1936), reversed on other grounds, 122 N.J. Eq. 404 (E. & A. 1937); Silbros, Inc., v. Solomon, 139 N.J. Eq. 528 (Ch. 1947).
The judgment is accordingly reversed. The mandate will direct judgment to be entered in favor of the plaintiff in conformity with the limitation of liability contained in the accepted proposal. No costs allowed on this appeal.