HANNAH J. SUMMERILL

*v.*

JOSEPH SUMMERILL.

[Decided July 7th, 1913.]

1. On a bill for an accounting with respect to all dealings and transactions between the complainant, as widow of a deceased co-partner and the principal beneficiary and residuary legatee under his will, and who is also the executrix thereof, and the defendant as surviving partner who is

charged with fraud and who died *pendente lite* before the hearing, evidence *held* insufficient to entitle the complainant to relief.

2. Where business is carried on by partners who have unrestricted access to the books, papers and business of the firm, it becomes the duty of the partners to examine them and complain promptly of any mistakes therein, and much more so of fraudulent transactions.

3. To entitle the complainant to an accounting extending over many years, where there was such free access to books and accounts by the partner alleged to have been defrauded, and with both partners now dead, and thus unable to explain their transactions, in order for the complainant to prevail she must adduce clear and convincing evidence of the correctness of her allegations.

On bill for accounting.

*Messrs. Bleakly & Stockwell,* for the complainant.

*Messrs. French & Richards,* for the defendant.

WALKER, CHANCELLOR.

The bill in this cause was filed against Joseph C. Summerill, individually, and as one of the executors of his brother, John Summerill, deceased. The complainant is the widow of John and is the principal beneficiary and residuary legatee under his will; also executrix thereof. The bill charged that the defendant has refused to account for the proceeds of the partnership business, and particularly for the income and other proceeds of stock, bonds and other investments acquired by the partners during the lifetime of John Summerill.

The defendant answered that all the partnership dealings in stock and other investments between the partners were closed and settled on November 1st, 1899, and thereafter the defendant, Joseph C. Summerill, dealt in stocks and other investments in his own name and with his own funds, an account of which was kept in the books of the partnership, but that John Summerill was not in any way interested therein, nor was the partnership after the date last mentioned; that there were many settlements between the partners after November 1st, 1899, at no one of which was the stock and bond account considered as partnership property.

The defendant died *pendente lite* and his executor was substituted in his place and stead.

The partners, who were brothers, lived in the same town where their business was carried on, and were in daily, or almost daily, attendance upon the business. Each had access to the books and documents of the concern.

The charge against the deceased defendant is one of fraud. This is a charge which is not lightly to be presumed but must always be proved. It is sometimes said that it is never presumed. Of course, it may be inferred from facts, but the facts must clearly establish the inference.

Where business is carried on by partners who have unrestricted access to the books, papers and business of the firm it becomes the duty of the partners to examine them and complain promptly of any mistakes therein, and much more so of fraudulent transactions. *30 Cyc. 448, No. 14; Dobbins* v. *Tatem, 25 Atl. Rep. 544, 546.* It is significant that John never complained of these alleged frauds upon him in his lifetime, and that he continued his business with his brother for so many years, notwithstanding his asserted course of conduct.

On behalf of the defendant twelve witnesses were sworn, who testified to conversations with the complainant's intestate, the deceased partner, whose testimony when combined, digested and directed to the point, *clearly proved that John repeatedly declared in and after 1900 that he had ceased to have any connection with the stock and bond business, and that his brother was engaged in that enterprise on his own account alone.* True, witnesses were called who testified that Joseph, after 1900, referred to the stock enterprise as "ours" and said "we bought," &c., but that may be referred to his habit of speech about firm business, of which stock and bond operations were once a part, or may have been directed to deception of the persons spoken to in order to avoid questions or making explanations concerning a change in a portion of the firm's business.

To entitle the complainant to an accounting extending over so many years, where there was such free access to books and accounts by the partner alleged to have been defrauded, and with both partners now dead and thus unable themselves to explain

their transactions, in order for the complainant to prevail she would have to adduce clear and convincing evidence of the correctness of her allegations. At best for her, and at worst for the defendant, the case is one of serious doubt and great difficulty. In such a posture the complainant does not show herself entitled to the relief she seeks.

The accounting prayed for will be denied and the bill dismissed, with costs.