RENE L. K. FORTUNEL, complainant-respondent,

*v.*

JAMES MARTIN and KATE MARTIN, defendants-appellants.

[Argued May 18th, 1933. Decided September 27th, 1933.]

*Mr. William I. Garrison,* for the appellants.

*Messrs. Blumberg & Blumberg,* for the respondent.

The opinion of the court was delivered by

WELLS, J.

This is an appeal from a decree entered in the court of chancery in favor of the complainant, in a suit to foreclose a mortgage given by the defendants to one Leonard Fortunel, now deceased, who, by his last will, bequeathed the same to his son, the complainant. Prior to the date of the mortgage, Leonard Fortunel had been the owner of the mortgaged property but it had been sold by the sheriff under a judgment execution, obtained by Henry Kann against Leonard Fortunel.

Kann, the purchaser at the sheriff's sale, offered to convey the property to Leonard Fortunel, or his nominee, for the sum of $900.

Fortunel, however, had only $500, but his friend, James Martin, had $400, and advanced this amount with the result that Kann was paid off.

There is a dispute as to the nature of the transaction from this point on.

The complainant's version is that Leonard Fortunel borrowed outright the $400 from James Martin and then sold the property to him for $7,600, the deed, dated March 2d, 1926, being made directly from Kann to James Martin and Kate Martin, his wife; that the Martins paid no money but executed on March 2d, 1926, a mortgage covering said property to Leonard Fortunel for $7,600, payable without interest, at $8 per week. On the same date as the date of the deed and mortgage, Leonard Fortunel, as party of the first part, and

James Martin and Kate Martin, his wife, as parties of the second part, executed an agreement in writing. This document states that the party of the first part agrees to sell and convey to the party of the second part the premises in question and that the party of the second part, for and in consideration of the sum mentioned in the deed, agrees to furnish and provide the party of the first part certain rooms, comfortably arranged and furnished, together with a piece of land attached to the house, for his use and benefit as long as he lives, the same to be considered as part of purchase price. The party of the first part agreeing to accept the sum of $8 per week as part of purchase price according to mortgage made and entered into the same day.

The deed, mortgage and agreement were all dated March 2d, 1926, and recorded March 25th, 1926, and, complainant insists, the entire transaction was completed at one time and that these duly executed and recorded documents speak for themselves and justify the decree, advised by the vice-chancellor, for the foreclosure of said mortgage.

The defense is that at the time they were induced by Leonard Fortunel to pay the $400, it was agreed that the premises were to be conveyed to Martin and his wife, who promised to board Fortunel for life in return for his surrendering to them any interest he might have in the said premises; that the deed was executed in December, 1925 (not on its date March 2d, 1926); that it was delivered to Fortunel probably undated; that the Martins never saw it and they say (but offer no evidence to prove) that Fortunel filled in the date to correspond with the date of the mortgage and agreement; that the mortgage in question was obtained from Martin and his wife by fraud, in that Fortunel falsely represented the nature of the instruments signed by the Martins, who, being unfamiliar with business matters and unlearned, believed, in reliance upon the representations of Fortunel that they were merely signing memoranda to serve as evidence for a promise on their part to board, lodge and support Fortunel for life, which promise was fulfilled; that upon the Martins' discovering, nearly two years after the execution of said

papers, that they had signed not memoranda of an agreement, as falsely represented by Fortunel, but a bond and mortgage, they·confronted Fortunel with his wrongdoing and went with him to their attorney, William I. Garrison, and that Leonard Fortunel agreed to cancel or destroy the papers so signed by the Martins, before death, or that he would provide for their cancellation, destruction or satisfaction in his last will, but that he fraudulently neglected, failed and refused to do so; that Fortunel further defrauded the Martins in that he represented that he had made a .will canceling or satisfying the said bond and mortgage, and that he would not revoke or change these provisions of his will, in consideration of the boarding, lodging and supporting of Fortunel by the Martins; that in reliance upon these promises and representations, they boarded, lodged and supported the said Leonard Fortunel until his death on December 31st, 1930, a period of more than five years, but that the said Fortunel fraudulently executed a will, which was admitted to probate, in which he made no provision for the cancellation or satisfaction of the said bond and mortgage. By a counter-claim the defendants prayed that the complainant be ordered and decreed to surrender the bond and mortgage properly endorsed for cancellation, and that said mortgage be decreed to be canceled of record and be no longer a lien upon the lands.

In support of his case, complainant produced the record of the deed from Kann to the Martins, the mortgage from the Martins to Fortunel and the agreement signed by the Martins and Fortunel. This evidence was supplemented by the testimony of Fred Berchtold, a real estate and insurance man, who had been a justice of the peace in Egg Harbor City for more than thirty years, a disinterested witness whose integrity was not questioned. Mr. Berchtold testified that he drew the bond, mortgage and agreement of March 2d, 1926, at the request and in the presence of all the parties and that he fully explained the contents of the papers and read them to the Martins before they signed them. He·took the acknowledgment of all the parties.

In his own defense, James Martin testified that he could

not read, although his wife could. Both speak and understand the English language perfectly. They testified that they went to Mr. Berchtold's office to sign some papers and heard them read but didn't know what they were signing, but having absolute confidence in Fortunel, they executed the papers at his direction and on his assurance that they either made absolute their rights to the property, or that the papers were merely a method of making Fortunel secure that they, the Martins, would carry out their agreement to support him.

The Martins say they first learned about the fraud practiced upon them by Fortunel in the month of October or November, 1927, when Fortunel refused to permit them to make repairs to the property, and upon inquiry made, they discovered that the papers they signed were a bond and mortgage and they went straightaway, with Fortunel, to the law office of William I. Garrison about the matter.

Mr. William I. Garrison, who, as the attorney of the Martins on this appeal, cites on his brief his own testimony, given at the hearing by him as a witness for the Martins, as proof of the acknowledgment by Fortunel of his fraud and wrongdoing and his agreement to rectify the same. Inasmuch as this evidence forms the backbone of defendant's case, we cite the part relating to Fortunel's alleged admission in full. Mr. Garrison, testifying, said:

"When he [referring to Leonard Fortunel] came to the office I said, 'you got my letter?' He said, 'yes.' I said, 'why have you taken a mortgage on Mr. Martin's property?' He said, 'I did that to——' he said, 'I was advised to do that, that it would make me safe and make them carry out their agreement.' I said, 'well, haven't you made an agreement with Mr. and Mrs. Martin that this property was to be theirs, they to care for you as long as you lived?' 'Sure,' he said. He says, 'I am not changing it.' I says, 'you have taken a mortgage and that don't look as though you were carrying out your agreement.' But he says, 'if he is afraid of that mortgage I will go have Mr. Babcock to draw me a will.' I said, 'I don't believe that would suit Mr. Martin.' And then they talked it over and Mr. Martin agreed that if he would make a

will so that mortgage would be done away with when he did die that he would be satisfied, and they left my office, or he left my office, I don't know where he went. I didn't follow him."

The defendants supplemented this testimony by that of Mr. Charles C. Babcock, who said on or about November 21st, 1927, Leonard Fortunel came to his office and had him draw a will leaving everything he had to the Martins and giving as a reason that the Martins had been good to him. The will itself, which was delivered to the Martins and was offered in evidence, states that testator was excluding his wife and son for the reasons that the wife had deserted him more than eight years before, and his son had not treated him as a son should treat a father, and that in leaving his property to the Martins it was his intention to reward them for their kindness to him.

Evidently Mr. Babcock was not informed that the motive for the making of this will was to rectify a wrong. In fact, Mr. Babcock witnessed the last will of Leonard Fortunel, dated February 9th, 1929, whereby all the testator's property was left to his son, the complainant. Defendants testified that they did not know of this second will until after Leonard Fortunel's death, December 31st, 1930.

It seems strange that knowing, as they claim they did in November, 1927, that Fortunel had deliberately deceived them on March 2d, 1926, about the mortgage, the Martins should have again trusted him to make things right by a will, and it seems stranger still that if there had been an oral agreement, as claimed by the Martins, that their attorney, Mr. Garrison, to whom the Martins had entrusted the written agreement of March 2d, 1926, did not insist on the canceling of the written agreement and mortgage and the execution of a new written agreement to straighten out the entire matter. He knew and the Martins are presumed to have known that a verbal agreement of this kind was void under the statute of frauds (*Hirschberg* v. *Horowilz, 143 Atl. Rep. 351,* not officially reported), and that a will could be changed on the whim of the maker. Having been imposed upon once by Fortunel, it would

seem unlikely that the Martins would have been so trustful the second time. Moreover, we fail to find in the testimony of Mr. Garrison any admission on the part of Mr. Fortunel of fraud or wrongdoing.

This evidence fails to measure up to the standard of proof required to overthrow the duly executed and recorded written agreement and mortgage given by the defendants to Leonard Fortunel. At the most, the testimony tends to show that at one time, perhaps under some pressure, Leonard Fortunel intended to leave all his property, including the mortgage in question, to the Martins. For reasons of his own, however, he did not do so, but permitted his relations with the Martins to remain as they were contracted to be under the mortgage and written agreement.

The Martins admit that they paid Fortunel money, sometimes $50 and sometimes $100 at a time, amounting in all to $400 or more but claim that these payments were not paid on account of the mortgage but were gifts to Fortunel for spending money. This is difficult to believe.

Much stress is placed by the Martins on the testimony of Berchtold that the property at the time of the conveyance to the Martins was worth only about $3,500.

We are not concerned with the question of the improvidence of the transaction. It may or may not have been a good bargain for the Martins at $7,600. We are concerned only with the question of the fraud alleged to have been practiced upon them by Fortunel.

The vice-chancellor, who saw and heard the witnesses, concluded that the allegations of fraud, the burden of proving which was on the defendants, had not been established.

We think he was justified in his conclusion.

Where parties attach their signatures to instruments otherwise valid, a conclusive presumption is created, except as against fraud, that the signer read, understood and assented to its terms. *Fivey* v. *Pennsylvania Railroad Co., 67 N. J. Law 627.*

"Estoppel is not favored nor fraud presumed, but must be strictly proved by clear, concise and unequivocal evidence,

particularly where real estate titles are involved." *Basuk* v. *Damutz (Supreme Court of Errors), 105 Conn. 378; 135 Atl. Rep. 453.* The testimony offered by the defendants falls far short of these requirements.

In the complainant's bill and in the decree, defendants are allowed credit for the $400 originally advanced by them, and credit for $800 for the food (not rooms) alleged by the Martins to have been furnished to Fortunel, thereby reducing the amount due on the mortgage to $6,400.

A careful examination of all the evidence in the case leads us to the conclusion that the decree of the court of chancery should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 14.

*For reversal*—None.