On or about February 25th, 1932, the complainant was injured on the premises 471-473 Newark avenue, Jersey City, owned by Anthony Okula and Franciszka, his wife. She, consequently, instituted an action in the New Jersey supreme court against the owners, and on December 20th, 1933, obtained a verdict of $3,000 against them. On March 14th, 1932, the Okulas conveyed their interest in the premises to Anna Kaminski. The complainant after recovery of the judgment, instituted a suit in this court against the Okulas and Anna Kaminski charging that the premises had been fraudulently conveyed; and, after a hearing, on or about April 18th, 1934, a decree setting aside the conveyance was entered.
The Henderson Building and Loan Association held a mortgage on the premises. The Okulas having defaulted in the payment of installments, interest and taxes, the building *Page 369 
and loan association, on or about February 18th, 1934, instituted foreclosure proceedings against them. The taxes due at the time of the institution of the foreclosure suit were for the years 1931, 1932 and 1933, amounting to approximately $1,100. This complainant was made a party defendant in the foreclosure suit. She filed an answer therein alleging that the suit was instituted as a fraud upon her to make ineffective her judgment lien against the property. On April 30th, 1934, she, by consent, withdrew her answer. Her solicitor then served notice upon the building and loan association that she desired to have her encumbrance reported upon. She did not dispute the order and priority of the liens as shown in the bill of complaint. A final decree was entered and a writ of fieri facias was issued to the sheriff of Hudson county directing him to sell the premises and to pay to the building and loan association the amount due it on its decree, and the defendant (this complainant) the amount due her on her judgment.
On August 16th, 1934, the sheriff sold the property to the highest bidder, the Henderson Building and Loan Association, the defendant herein, for the sum of $4,000. The solicitor of this complainant was present at the sale and, accordingly, was cognizant of the proceedings then pending.
In March, 1935, a voluntary petition in bankruptcy was filed by the Okulas in the United States district court for the district of New Jersey, in which the complainant and her then, and now, solicitor, John F. Gough, were named as creditors. It being therein alleged that this complainant had obtained a judgment against the Okulas, and that John F. Gough, her solicitor, had received an allowance from this court as solicitor (of this complainant) in proceedings to set aside the conveyance to Anna Kaminski as aforesaid. This complainant and her solicitor received notice from the referee in bankruptcy that the Okulas had filed a voluntary petition in bankruptcy; but there is no record of their appearance in those proceedings. On August 5th, 1935, an order of discharge was entered in the bankruptcy proceedings in the United States district court. *Page 370 
The building and loan association on August 16th, 1934, having purchased the property at the sheriff's sale, held the title thereto until on or about December 10th, 1935, a period covering approximately sixteen months, when it conveyed it to the defendant Franciszka Okula for the consideration of $7,700; $1,000 thereof being paid in cash, and the balance in the form of a purchase-money mortgage in the sum of $6,700.
Complainant, in her bill herein filed, alleges that the foreclosure proceedings instituted by the building and loan association was initiated through an unlawful, corrupt and fraudulent agreement between it and these defendants for the purpose of avoiding or "cutting off" the lien of her judgment against the premises in question. She, among other things, alleges that the defendant Michael A. Szadkowski, the solicitor for the building and loan association, aided the defendants herein in the consummation of that agreement. She prays, interalia, that her judgment be decreed prior and paramount to any alleged or pretended right, title, interest or lien of the defendants in and to the lands described in the bill.
This suit was hotly and vigorously contested and in the course of the hearing, evidences of "bad feeling" were frequently displayed by counsel.
The Bankruptcy act of 1898 (11 U.S.C.A. 35) provides: "A discharge in bankruptcy shall release a bankrupt from all his provable debts." There is no evidence in this case that the petition in bankruptcy was filed through any collusion or fraudulent agreement; the decree entered therein, therefore, is conclusive and binding.
"A judgment creditor of the bankrupt, after his discharge, cannot levy on and sell the bankrupt's property because of fraud in securing discharge. Hibbard v. Henderson, 44 Or. 317;75 Pac. Rep. 889." 7 C.J. 395.
"A discharge in bankruptcy releases the bankrupt from all his provable debts save such as are excepted by the Bankruptcy act, notwithstanding the fact that actions thereon may have been pending at the time when the bankruptcy proceedings *Page 371 
were commenced. Accordingly a creditor having no lien at the time of the debtor's discharge in bankruptcy cannot subject to his debt land acquired by the debtor after the creation of the debt, occupied by him as his residence, and set aside by the bankruptcy court as exempt." 7 C.J. 396 § 707.
It appears that —
"Although the authorities are not entirely uniform, the prevailing view seems to be that, where a creditor seeks to avoid the effect of a discharge as to his debt, he has the burden of proving that the discharge was for some reason not operative thereupon; and a bankrupt who defends on the ground of the discharge is not required to show that the debt was provable in bankruptcy and not within any of the classes excepted from the operation of the discharge. So where the creditor claims his debt was not duly scheduled, he must prove this, and also that he had no notice or knowledge of the bankruptcy proceedings." 7 C.J.415 § 735.
In the instant case the complainant and her counsel were named as creditors in the Okula bankruptcy proceedings and had received notice of its pendency.
Mr. Justice Heher, speaking for the court of errors and appeals, in City Hall Building and Loan Association v. StarCorp., 110 N.J. Law 570 (at p. 575), said:
"* * * where the bankrupt is sued on a debt existing at the time of the filing of the petition, the introduction of the order of discharge makes out a prima facie defense, and the burden is then cast upon the plaintiff to show that, because of the nature of the claim, failure to give notice, or other statutory reason, the debt sued on was by law excepted from the operation of the discharge."
The complainant's answer in the foreclosure proceedings, as heretofore stated, alleged fraud and collusion. She withdrew it, and, in its place, filed a notice to have her encumbrance reported upon. This court had full and complete jurisdiction in the foreclosure proceedings. The allegations the complainant here sets up could, and should have been disposed of in the foreclosure proceedings. The complainant then chose *Page 372 
not to have it there considered. Her reason for it does not appear. In Mayor, c., of Paterson v. Baker, 51 N.J. Eq. 49
(at p. 56), the court said:
"* * * the judgment of a court having jurisdiction of the parties and the subject-matter of the suit, is conclusive not only as to the res of that case, but as to all further litigation between the same parties touching the same subject-matter, though the res itself may be different."
Chancellor Walker, in the case of McMichael v. Horay,90 N.J. Law 142, speaking for the court of errors and appeals, said:
"Where one party recovers judgment against another and the defeated litigant commences suit against his adversary for damages for an alleged conspiracy, and the procuring of false testimony to be given, in the very suit in which the recovery was had, these matters, having been available as defenses in the suit and on the rule to show cause why a new trial should not be granted, cannot be made the basis of recovery; the doctrine ofres judicata, being applicable."
To the same effect is the principle enunciated by Vice-Chancellor Emery in Le Herisse v. Hess,57 Atl. Rep. 808, where he said:
"Where a creditor is not chargeable with any fraud in procuring a decree for the sale of mortgaged premises and a deficiency judgment, the debtor who defaulted in the foreclosure suit is concluded from litigating in another suit defenses which could and should have been litigated in the foreclosure suit, such as the procurement of the mortgage by a fraud to which the creditor was not a party."
The doctrine of res adjudicata is not a mere rule of procedure, but a rule of justice unlimited in operation, which must be enforced whenever its enforcement is necessary for the protection of rights and preservation of the repose of society, based upon the grounds that there should be an end to litigation, and that a person should not be twice vexed for the same cause.In re Walsh's Estate, 80 N.J. Eq. 565.
Counsel for complainant finds in the correspondence relating to the foreclosure suit that passed between Szadkowski, *Page 373 
as counsellor for the building and loan association, and Young, as counsel for the Okulas, an implication of collusion. I view the correspondence between counsel as business communications prefaced with an intimate or friendly salutation not uncommon among lawyers endeavoring to "iron out or smooth litigious wrinkles" along the "lines of least resistance." In my opinion, that correspondence in no way indicates a fraudulent, or corrupt agreement, or arrangement; there is not a word in it that spells "fraud." Counsel in support of his deductions stresses the fact that the Okulas, on a former occasion, had other litigation, in which they were represented by Szadkowski. Assuming that Szadkowski had been so engaged, that fact does not call for condemnation of his employment in this case where his conduct, I believe, appears to be above criticism. Okula had formerly been a director in the defendant building and loan association, but was defeated for re-election in October, 1935. During the period of his incumbency, the building and loan association, on or about September 13th, 1932, granted him, at his request, an extension of six months' time within which to pay his arrears to it. He failed to pay those arrears. Certainly the extension of time cannot be viewed as a link in a chain (or evidence) of fraud. Suit to foreclose the mortgage was instituted. During the foreclosure proceedings, a receiver pendente lite was appointed to collect the rents, and to rent the premises. During that time, Okula was permitted to occupy his apartments in the premises and was appointed custodian or janitor, of the premises. The receiver had occasion to reduce some of the rents of the tenants, for which Okula criticised him. This retainer of Okula's, coupled with his criticism of the receiver, counsel for the complainant points to, as evidence of an illegal and fraudulent agreement among the defendants. While these evidences may occur to the complainant's counsel as contributing elements of fraud, I cannot concur in his resulting inferences. This court will not presume fraud, but it insists upon the production of strict conclusive evidence of it. It must be strictly proven by evidence that is clear, concise and unequivocal. Fortunel v. Martin, 114 N.J. Eq. 235; Summerill v. *Page 374 Summerill, 83 N.J. Eq. 3; affirmed, 83 N.J. Eq. 350; Keller v.Linsenmyer, 101 N.J. Eq. 664; Wiley v. Wirbelauer, 116 N.J. Eq. 391; Horton v. Bamford, 79 N.J. Eq. 356. "To draw an inference of fraud when the opposite inference may be drawn, and fairly so, is not the province of a court of equity." FederalReserve Bank of Philadelphia v. Godfrey, 120 N.J. Eq. 203.
I do not quite understand why Szadkowski was made a party to this suit. He is neither a necessary nor a proper party to it. I cannot conceive how a decree can be entered against him since the title never was in his possession, nor had he any interest in it. In Morris v. Leddy, 111 N.J. Eq. 129, Vice-Chancellor Fallon said:
"It was urged during the hearing that Kruger and Rosenbaum should be made parties defendant to this suit. Such claim is untenable. Kruger and Rosenbaum are neither necessary nor proper parties to the suit. No decree is sought herein against them. They are not in possession of nor have they any title to any property as to which complainants seek redress. The only necessary party defendant herein is the defendant Grace Realty Company which holds, and claims to hold as of right, a $2,500 bond and mortgage, made by complainants to said defendant Grace Realty Company, under the circumstances hereinabove mentioned, which said bond and mortgage was fraudulently obtained, and for which no consideration was given."
The Okulas and the building and loan association are most assuredly proper and necessary parties, they having held title to the premises.
The debt of the complainant was extinguished in the proceedings in bankruptcy in the United States district court, and certainly that proceeding cannot be collaterally attacked in this suit.Matawan Bank v. Feldman, 12 N.J. Mis. R. 785;174 Atl. Rep. 442. It must be borne in mind that the conveyance which the complainant seeks to attack is not a conveyance by an alleged debtor but one made as a result of judicial determination, in which proceedings the complainant was joined as a party defendant. Section 11 of the *Page 375 
Uniform Fraudulent Conveyance act (laws of 1919, 1 Cum. Supp.Comp. Stat. 1924), acts as a bar against the prosecution of any action similar to this, and specifically states that the effect of bankruptcy shall govern in any case not provided for in the Fraudulent Conveyance act. Since I have already stated that I find no covinous or fraudulent agreement between those defendants to violate the complainant's rights, I, accordingly, conclude that the foreclosure proceedings alleging the complainant's lien was bona fide.
The complainant's counsel called as a witness, the secretary of the building and loan association who produced the books and records of the association. Those records with the testimony submitted, show that the proceedings and attitude of the building and loan association, its directors and officers, were based on sound business principles and clearly evidences good faith. Szadkowski, the defendant, acted as the representative and agent of the building and loan association in the foreclosure suit. What actions he, individually, may have had with the Okulas prior to the institution of the foreclosure proceedings were entirely without the scope of his association with the building and loan; consequently, the building and loan association is not to be bound by his prior representation of others.
The complainant called, as a witness, the defendant Franciszka Okula, Lloyd Whitford, secretary of the building and loan, and the defendant Szadkowski. No part of their testimony indicates fraud or collusion. Having called them, the complainant is bound by their testimony. Carluccio v. Winter, 108 N.J. Eq. 174. In the last cited case the court in effect observed that the complainant by calling the defendant husband and wife to testify impliedly represented that their testimony was worthy of some credit and he cannot now argue that it be disregarded even though they be interested parties — where their testimony is in no way contradicted. It might be mentioned that the testimony of the witnesses last named has not been contradicted. Krafte v.Belfus, 114 N.J. Eq. 207.
Under the circumstances, I shall advise a decree dismissing the bill. *Page 376