On December 15th, 1930, the Donald Realty Company, a corporation of New Jersey, applied for and obtained from the defendant building and loan association a first mortgage loan of $7,500 on real estate located in the City of Newark, State of New Jersey. These complainants, Bell and Perlman, became sureties on the bond accompanying the mortgage (Exhibit C-3). They were officers of the corporate mortgagor. The bond and mortgage are the type commonly used by building and loan associations in this state. The *Page 357 
proceeds of the mortgage went to the Donald Realty Company, the primary obligor. No part thereof was paid to the sureties, these complainants. The Donald Realty Company continued the payment of the monthly installments due under the terms of the bond and mortgage, for a certain period of time, or until it ran into financial difficulties. On November 12th, 1935, it conveyed its interest in the mortgaged premises to the Barbara Company. The Barbara Company made payments to the defendant building and loan association in accordance with the terms and conditions of the said bond and mortgage.
On May 10th, 1938, the new owner, the Barbara Company, entered into a "recast agreement" of the mortgage with the defendant building and loan association. Under that agreement the mortgage indebtedness was reduced to $6,550; the paid up shares amounting to $1,704.49 were canceled and the withdrawal value thereof was applied on account of the principal sum due on the mortgage; and the rate of interest on the mortgage was reduced from 6% to 5%. In the "recast agreement" amortization payments were altered from the terms of the original mortgage to the following: $40 per month was to be paid instead of $75 under the old form of mortgage; that monthly payment was to be applied, "First to the payment of interest at the rate of 5% per annum, second to the payment of all unpaid taxes, assessments, water rents, fire and all other insurance premiums, * * * and all other liens or charges which may be imposed or charged against said premises and may be advanced by the Association, the lien of which could be concurrent or superior to that of the Association." The "recast agreement" further provides that the new principal sum is to be stated after each such monthly payment. The balance on the said bond and mortgage became due and payable on the second Tuesday of May, 1941. Alterations in the terms of the original bond and mortgage are expressed in the "recast agreement" of 1938 in the following language: "All the terms, covenants and conditions contained in the Bond and in the Mortgage above referred to are hereby made a part *Page 358 
hereof as though particularly recited at length herein and shall continue except as herein modified." By the terms of that agreement, the rents, issues and profits are assigned immediately to the mortgagee. It also provides that the mortgage and bond would become immediately due and payable at the discretion of the board of directors upon a conveyance of the property being made. The last section of the "recast agreement" seeks to expressly discharge the Barbara Company from any obligation it may have incurred in the transfer to it of the property and recites: "It is further understood and agreed that notwithstanding the language of this Agreement heretofore expressed, the Owner does not make itself personally liable to pay said Bond and Mortgage, or to make said payments as are hereinabove set forth, it being intended that this Agreement is one only of modification of the
terms as now set forth in said Bond and Mortgage." (Italics mine.) Exhibit C-7.
The Barbara Company defaulted in the terms and conditions of the bond and mortgage and the "recast agreement," and the defendant building and loan association instituted foreclosure proceedings and thereby acquired title to the premises described in the mortgage. A deficiency resulted and an action at law was instituted against the sureties, these complainants. Thereupon, Joseph Bell filed the bill of complaint herein. He applied for, and obtained, a preliminary restraint against the prosecution of the law action which restraint has been continued to date.
When this cause was at issue, the complainant Charles Perlman petitioned for leave to intervene as a co-complainant. Leave was granted him and he filed a supplemental bill of complaint upon which issue was joined.
The defendant building and loan association filed a counter-claim herein seeking to restrain complainants from setting up any defenses to the law action and demanding a decree for the amount of the alleged deficiency.
The defendant questions the jurisdiction of this court to entertain this suit and contends that the complainants are *Page 359 
legal, and not equitable, sureties and that if they are entitled to any remedy, the courts at law can adequately supply it.
In the law action, the defendant building and loan association's complaint, in part, reads:
"On the 12th day of December, 1930, the defendants, Donald Realty Co., a corporation of New Jersey, Charles Perlman, and Joseph Bell, executed * * * their bond to the plaintiff * * *."
Perlman answered that allegation in the following language:
"This defendant admits the allegations set forth in Paragraph 1, except that this defendant, Charles Perlman, executed and delivered such bond as a surety only, and has at no time been a principal obligor or debtor by virtue thereof."
A reply was filed by the building and loan association, which reads as follows:
"The plaintiff denies every allegation in the Answer of the defendant, Charles Perlman." (Italics mine.)
With these pleadings of record in the law court, Perlman then came here and raised the point that the law court was powerless to deal with the question of such equitable defenses as he had. I believe there is merit in his contention. Slatoff v. Theurich,123 N.J. Eq. 593; 190 Atl. Rep. 40; Anthony v. Fritts,45 N.J. Law 1; Lewis v. Morgan, 132 N.J. Eq. 343; 28 Atl. Rep. 2d215 (65 N.J.L.J. 441).
Where the terms and conditions of a bond and mortgage to which sureties are parties have been amended or altered by a subsequent written instrument to which the mortgagee is a party, without the sureties' knowledge, acquiescence or consent, equity will protect the sureties from the effects of any deficiency action that might be instituted by the mortgagee because of a default in the terms of such subsequent instrument. In Oriental Building and LoanAssociation v. Nutley Avondale, c., Co., 129 N.J. Eq. 292;19 Atl. Rep. 2d 351, this court said:
"In view of the assumption of complainant's mortgage by the subsequent grantees, and, also, the execution of the *Page 360 
`recast agreements,' the answering and counter-claiming defendants are released from any obligation under complainant's bond."
Illustrative of the principle involved is that expressed by the late Vice-Chancellor Backes in the case of Penny v. Penny,88 N.J. Eq. 160; 102 Atl. Rep. 257, wherein he said in part:
"Bonds conditioned to obey writs of ne exeat are in the nature of equitable bail and the obligations of sureties are substantially the same as bail at common law. Palmer v.Palmer, 84 N.J. Eq. 550; Schreiber v. Schreiber, supra; 2Brandt S. G. No. 592; Johnson v. Clendenin, 5 C. J.
(Md.) 463. That a material amendment to a cause of action, upon which, as amended, the plaintiff relies for judgment, without the consent of the sureties, discharges the sureties, is uniformly laid down in the textbooks and the reports of decisions."
The "recast agreement" entered into as aforesaid, materially modifies and amends the original bond and mortgage to which the sureties were parties. The complainants received no notice of the proposal to "recast" and they had no knowledge of the agreement providing it until after its execution. Under the circumstances, they cannot be called upon to answer in damages any loss which a violation of the "recast agreement" entails to the mortgagee. The decisions of the courts of this state so holding are numerous; a few of them may be mentioned: Schumann v. Fidelity Union TrustCo., 126 N.J. Eq. 349; 8 Atl. Rep. 2d 852; Fidelity UnionTrust Co. v. Gottlieb, 125 N.J. Eq. 152; 4 Atl. Rep. 2d498; Oriental Building and Loan Association v. Nutley Avondale, c., Co., supra; Burack v. Mayers, 121 N.J. Eq. 135;187 Atl. Rep. 767; affirmed, 122 N.J. Eq. 5; 191 Atl. Rep. 841;Gorenburg v. Hunt, 107 N.J. Eq. 582; 153 Atl. Rep. 587; Rouse
v. Bradford Banking Co. (1894), 2 Ch. 32; affirmed
(1894), A.C. 586.
The last four words of paragraph (e) of the "recast agreement," viz., "except as herein modified" (Exhibit C-7), clearly shows that it was the intention of the parties to *Page 361 
modify, or amend, the original obligation. The liability of the sureties was fixed under the terms of the bond and mortgage; the "recast agreement," in effect, canceled it and saved them harmless from any deficiency claim.
The defendant's counter-claim alleges that the Donald Realty Company was stripped of its assets by the complainants, and that by so doing they perpetrated a fraud upon this defendant. It offered no evidence to sustain that allegation. See Fellman v.Henderson Building and Loan Association, 120 N.J. Eq. 367;185 Atl. Rep. 495, which in part says:
"This court will not presume fraud, but it insists upon the production of strict conclusive evidence of it. It must be strictly proven by evidence that is clear, concise, and unequivocal. Fortunel v. Martin, 114 N.J. Eq. 235; Summerill
v. Summerill, 83 N.J. Eq. 3; affirmed, 83 N.J. Eq. 350; Keller
v. Linsenmyer, 101 N.J. Eq. 664; Wiley v. Wirbelauer, 116 N.J. Eq. 391; Horton v. Bamford, 79 N.J. Eq. 356. `To draw an inference of fraud when the opposite inference may be drawn, and fairly so, is not the province of a court of equity.' FederalReserve Bank of Philadelphia v. Godfrey, 120 N.J. Eq. 203."
I find no evidence of fraud on the part of the complainants. The defendant offered no testimony at the hearing to meet or counteract the evidence of the complainants. Under all the circumstances, I feel that the complainants are entitled to exoneration and to the relief they seek. *Page 362