The mortgage under foreclosure covers ten adjoining tracts of land, one of which is owned by Adam Frank, three have been released, and the remaining six constitute the cemetery of West Ridgelawn Cemetery. The foreclosure is against West Ridgelawn Cemetery's six tracts. Frank is a defendant because of his ownership of some cemetery lots.
The mortgage was made by one Gruber to John W. Griggs, to secure his $25,000 bond given in part payment of the purchase price of the ten tracts, six of which were intended for cemetery purposes. Frank, with others, was the promoter of the cemetery; Gruber was his dummy. Gruber conveyed the six tracts to a trust company and it conveyed to West Ridgelawn Cemetery, subject to a scheme by which Frank *Page 358 
and his associates were to participate in the profits of the cemetery. Bittles v. West Ridgelawn Cemetery Co., 94 N.J. Eq. 808.
The bond and mortgage bear date April 2d 1906, and are payable in semi-annual installments of $5,000 each, the first of which fell due April 1st, 1907. The bill was filed June 5th, 1926. A subpoena issued June 7th, 1926, and was returned non est, because West Ridgelawn Cemetery was then in Frank's control and he and all his dummy trustees were residents of New York and service could not be made. A new subpoena issued April 7th, 1928, and was served. West Ridgelawn Cemetery and Frank answered July 10th, 1928, setting up the statute of limitations against the bond and, that for more than twenty years prior to the commencement of the suit there was no acknowledgment of the mortgage, no demand for the payment of the mortgage debt, and that no payments were made.
The first point to be decided is, when, in legal contemplation, was the suit commenced?
The filing of a bill, without more, is not the commencement of a suit. The issuance of process, after bill filed, and a bonafide attempt to serve the process are essential to the institution of a suit in equity. Hermann v. Mexican PetroleumCorp., 85 N.J. Eq. 367. The issuing of process in good faith for the purpose of being served also commences an action at law.Whitaker v. Turnbull, 18 N.J. Law 172; County, Admrx. v.Pacific Coast Borax Co., 67 N.J. Law 48; affirmed,68 N.J. Law 273. The original subpoena bore these qualities, and that it was not served because the defendant was not "at home" did not impair its vitality to commence the suit, nor diminish its efficacy to stay the running of the statute against the complainant's right of entry within twenty years of the default. The bill and writ symbolized a demand for possession within the statutory period and the owner cannot frustrate the demand and its legal consequences by absenting himself. He cannot hide and by hiding gain the status of an adverse possessor against the mortgagee for twenty years. But, if it be regarded as essential *Page 359 
to the commencement of a suit that process, though timely issued, must also be duly served to stay the statute, then the second writ herein issued will be treated as tacked to the first writ and its return day as substituted for the original return day in analogy to the course approved in the County Case, supra, where the return day of the writ, issued in time, was changed and served after the period for the running of the statute had commenced. The suit is deemed to have been commenced within twenty years of the time the mortgagee's right of entry accrued and tolled the running of the statute.
If, however, we consider the suit as begun when the second subpoena issued, April 7th, 1928, then, as to the two installments of principal of $5,000 each, due October 1st, 1908, and April 1st, 1909, the right of entry accrued within twenty years and they are not within the statute.
But it is an immaterial issue whether the suit was commenced in 1926 or 1928, for payments of interest were made within twenty years of either period, in acknowledgment of the mortgage debt. The payments save the mortgage against the claim of adverse possession and the running of the statute. There are in evidence two check vouchers to the order of Paterson Trust Company, then the holder of the mortgage, made by "Ridgelawn Cemeteries," signed by Bonynge, president, and Hoag, treasurer, one for $528 dated June 17th, 1908, the other for $524.24 dated October 20th, 1908, which were paid for semi-annual interest installments due April 1st and October 1st, 1908; some slight payment on account of principal during the interval accounts for the discrepancy. These payments remove the presumption for payment and take the case out of the statute. Colton v. Depew, 60 N.J. Eq. 454;Rau v. Doremus, 101 N.J. Eq. 809.
There were also numerous payments of principal; one within twenty years of the test and service of the last subpoena. Shortly after the mortgage was made, Mr. Griggs borrowed money from the Paterson Trust Company and assigned the mortgage as collateral security for the loan. Griggs insisted upon payment of his mortgage and by arrangement *Page 360 
with the trustees of West Ridgelawn Cemetery, it was taken over by one Schatzkin who caused it to be assigned to the Guarantee Mortgage Company of Passaic, December 10th, 1908. There was then due on the mortgage $21,110.52. In 1908 the complainant Bittles, and his group wrested control of West Ridgelawn Cemetery from Frank, only to lose it again to him in 1912. When Schatzkin, who was interested with them in the enterprise, demanded his money, the then ten trustees of West Ridgelawn Cemetery raised the money to prevent foreclosure and took an assignment to the complainant and William P. Aldrich, two of them, in trust for all, July 18th, 1910. Aldrich's executor assigned to the complainant. At that time there was due on the mortgage $16,962.04. Some of the principal, paid in reduction of the mortgage, was paid by the promoters, derived by them from the sale of three of the four tracts not included in the cemetery, and released from the operation of the mortgage. In 1907, during Griggs' ownership, $3,889.48 was paid. During the time Schatzkin or his company held it (December 10th, 1908 to July 18th, 1910) there was paid $4,148.48. Of this sum, $3,000, was paid June 3d 1910, to the Paterson Trust Company. Schatzkin evidently had also pledged the mortgage with the trust company for a loan. The $3,000 payment arose in this manner: Gruber sold Tract Number 2, one of the ten tracts mortgaged, but not included in the foreclosure, to one Van Buren in 1907, who gave a purchase-money mortgage for $3,000 which Gruber assigned to the Paterson Trust Company as substituted collateral in consideration of releasing Tract Number 2 from the Griggs mortgage. The release was delayed until May 7th, 1907, when it was executed by the Guarantee Mortgage Company. Van Buren paid off the $3,000 mortgage June 3d 1910, to the Paterson Trust Company. The payment to the trust company obviously did not interrupt the running of the statute, for its application at that time in reduction of the mortgage was without notice to or the assent of West Ridgelawn Cemetery, then the owner of the land. 2 R.C.L. 931. The application had been made *Page 361 
in 1907 when Gruber assigned the mortgage to the trust company.
The defendants object, that the payments of the two installments of interest within twenty years were not made by West Ridgelawn Cemetery, but by strangers to it, and consequently did not interrupt the running of the statute. It is true West Ridgelawn Cemetery had no funds when the payments were made; it has sold no burial lots, but this was the then situation; East Ridgelawn Cemetery and West Ridgelawn Cemetery, though separate corporate entities, were promoted as a single operation. The lands of the two cemeteries were sold to them jointly for a single consideration, thirteen thousand five hundred indivisible profit-sharing shares of the joint enterprise. See 94 N.J. Eq. 808.
The scheme was condemned as unstatutory in East RidgelawnCemetery Co. v. Frank, 77 N.J. Eq. 36, and again in the same case reported in 104 Atl. Rep. 594, but the promoter persisted. East Ridgelawn Cemetery was put into the market first and prospered; West Ridgelawn Cemetery was held in reserve and its carrying charges were financed by the promoters with the funds of East Ridgelawn Cemetery, advanced as required to sustain it during dormancy. The installments of interest were paid by the officials of West Ridgelawn out of the treasury of the common undertaking — by the checks of "Ridgelawn Cemeteries" but nevertheless for West Ridgelawn, in acknowledgment of the mortgage debt. The source of the wherewithal is immaterial.
There is also in the case a letter of June 5th, 1908, written by William H. Bonynge, president of West Ridgelawn, to Mr. Griggs, then the holder of the mortgage, then hypothecated with the Paterson Trust Company, reminding him of the agreement to release the Van Buren Tract Number 2, from the operation of his mortgage and enclosing a form of release, and also a letter from Frank to Bonynge of May 18th, 1908, urging the release. The president's letter is an unmistakable recognition by West Ridgelawn Cemetery of the existence of the mortgage within twenty years of the beginning of the suit. *Page 362 
Then there is the fact that the complainant and his fellow trustees had to buy in the mortgage in 1910 to prevent a foreclosure. That is cogent proof of its currency within twenty years. It was, as well, corporate acknowledgment of a valid and subsisting encumbrance, for persuading themselves to purchase the mortgage as a measure of conserving the company's land, the trustees acted officially, though personally they furnished the means and personally took the title.
Much testimony was taken at the hearing that presently need not be discussed. When the decree was advised the complainant sought an accounting of Frank's stewardship; he had made large sales and the complainant sought the proceeds out of which to satisfy the mortgage debt and permission was given to amend the bill praying for an accounting and the accounting was permitted to go on upon the assumption that amendment was made. Later an amended bill was filed, but stricken out on motion; the testimony also should have been stricken out.