The bill is to cancel a life insurance policy on the ground of fraud. The policy, $2,000, was of the endowment, accident *Page 289 
and disability type, $20 a month in case of total and permanent disability. It was written April 17th, 1930, and in June, 1931, learning that the insured, Winnick, was about to file a claim for total and permanent disability, the company, after investigation, tendered the paid premiums and demanded return of the policy. The charge of fraud is that in his written application for the insurance, dated March 31st, 1930, Winnick was called upon to "name all causes for which you have consulted a doctor in the last ten years," and he stated "occasional cold." And asked the question: "How long since you have consulted a doctor and for what?" he answered: "About seven years — cold in the head."
In truth, he had consulted his family physician at the latter's office, sixteen times in the then past seven years and not once for a cold. The false representation, if material and relied upon to the complainant's injury, presents the plainest kind of a case for relief in equity as well as at law.
The defendant had consulted Dr. Butler, December 29th, 1923, "for indigestion, gas and so forth;" August 11th and 29th, 1924, "for the same abdominal complaints;" July 13th, 1925, for an abdominal cist; July 16th and 20th, 1925, for the "same vague abdominal symtoms;" January 3d 1927, for infected teeth; January 18th, 1927, for "vague joint pains all through his body;" July 28th and August 19th, 1927, "the same old indigestion symptoms." February 20th, 1928, the same pains, and upon X-ray examination nothing was found to account for his complaint outside of a falling of the large bowel, ptosis of the bowel, for which a supporting abdominal belt was advised; September 29th, 1928, "for general pains all over his body;" October 2d and 3d 1928, for pain on swallowing. On October 7th, 1930, six months after the policy was issued, he suffered a typical case of angina pectoris, of which the doctor says "looking back on it, it was probably the gradual development of the condition." The physician, during the treatment, had no diagnosis for his patient's trouble; he was baffled and towards the last thought the symptoms neurotic. Winnick says he was always in good health, occasionally suffering from an upset stomach, that he *Page 290 
never suspected he was suffering from an heart ailment. Now, what the defendant says may all be true enough and he may have honestly regarded his protracted abdominal complaints as trifling, but the insurance company wanted, and had the right to be given the information it sought in order to form its own conclusion as to the risk. The false statement, that it was about seven years since he had consulted a doctor and then only for a cold, was assuring of good health, and disarming. The company did not solicit his opinion, but asked for a fact, of which the defendant had definite knowledge, and a truthful answer would have put it on guard and further inquiry. No question concerning an applicant's physical condition and insurability is of greater importance to the insurer than the medical history. The false answer was material as a matter of law; that it was relied upon as material, is proved; it is the testimony of the medical director of the insurance company who passed upon the application, that had the truth been known, the risk would not have been accepted.
The defendant's plea that he did not intend a fraud is vain, and his contention that only purposeful fraud will defeat his right to the policy is misapplied. The nature of the question and the falsity of the answer precludes the plea; and there is a conclusive presumption of purposeful fraud. The question was unqualified, as was the answer. His statement that he had not consulted a doctor in seven years was untrue and he knew it to be untrue. He cannot be heard to say he did not mean what he said.Pom. Eq. Jur. 1835; Metropolitan Life Insurance Co. v.Sussman, relied upon by the defendant, holds no different doctrine. The bill was to cancel a policy for fraud, and the court of errors and appeals, in 109 N.J. Eq. 582, in affirming Vice-Chancellor Fielder's decree dismissing the suit said, that "under the allegations of the bill it was incumbent upon the complainant to prove the misrepresentation in the answers given and that those answers were fraudulent in purpose." The allegations were, in the language of the vice-chancellor, "that in his application for insurance, the defendant made certain false statements, knowing *Page 291 
them to be false, with intent to deceive the complainant." Of course the probata must support the allegata. But aside from the technicality, and looking to the merits, one of the misrepresentations related to other insurance held by the defendant which the complainant alleged he had falsely suppressed; it appeared, however, that the insurance company had notice of the other insurance and, consequently, had not relied on the written misrepresentation. As to the other misrepresentations, one related to the defendant's physical condition, to which the answer was not untrue, and the other concerned his general health, which, resting in opinion honestly given, though untrue, was a representation of belief, not of fact. In either aspect, the vice-chancellor correctly applied principles laid down by our highest court in cases of insurance fraud. In Kerpchak v. John Hancock Mutual Life Insurance Co.,97 N.J. Law 196, cited by him, the deceased died of pulmonary tuberculosis. She had consulted a physician twice during the month of the application for insurance, who told her she had weak lungs and catarrh, and she had been advised by the district nurse to go to Glen Gardner, known to her to be an institution for tubercular patients. Now, it is common experience that victims of this wasting disease rarely are convinced of their affliction, and if the question put to the applicant had been whether she was thus suffering, a negative answer, resting in honest hope or belief, could not be said to have been absolutely and purposefully false, as a matter of law, but the insurance company did not rest with that inquiry, and defended the suit because the deceased's representation, that she had never consulted a physician, was false and fraudulent. Mr. Justice Trenchard, in reversing the refusal of the trial court to direct a verdict for the insurance company observed, and it describes the situation here, that "the question put in the application was not ambiguous, and called for the statement of a fact, not the expression of an opinion. The false answer was made understandingly, knowingly and willfully. The insured was a native of this country, intelligent and understood English. The question was put in English, and her doctor was an *Page 292 
English-speaking physician," and the learned justice laid down the principle, which has been here applied, that "the legal rule is that where, as here, a policy provides, as required by our insurance law, that `all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties,' the policy will be avoided for a misrepresentation in the application, made a part thereof, if the misrepresentation be material and fraudulent; that is to say, if it be the statement of something as a fact, which is untrue, and which the insured stated, knowing it to be untrue, and with an intent to deceive, or which he stated positively as true, without knowing it to be true, and which had a tendency to mislead; such fact in either case being material to the risk." In Prahm v.Prudential Insurance Co., 97 N.J. Law 206, the same justice, at the same term, distinguished fraudulent intent as a matter of law and fraud as a question of fact and reversed a directed verdict for the defendant, holding it to be a question of fact for the jury whether the deceased intended imposition by answering that he had been attended only by a named physician whereas the attending physician had called in a consultant and the deceased had been treated by a chiropractor and he says "the rule is that if in the questions and answers there is any ambiguity for which the company is responsible, it is to be resolved against the company in determining whether the answers are false. Mackinnon
v. Fidelity Co., 72 N.J. Law 29. Here the question put by the company asked the names of attending physicians only. A physician called in consultation by the attending physician is not necessarily to be regarded as an attending physician, and neither is a chiropractor. And where, as here, there is a lack of conclusive and unquestioned proof of the willful falsity of a representation, the question is one for the jury. There must exist no rational theory upon which the jury might find the truth or good faith of the answer of the insured before the court can direct a verdict for the company. Henn v. Metropolitan LifeInsurance Co., 67 N.J. Law 310; Duff v. Prudential InsuranceCo., supra." In Locker v. Metropolitan Life Insurance Co.,107 N.J. Law *Page 293 257, the court of errors and appeals sustained a direction of a verdict for the defendant because among other things the insured answered that she had not consulted a physician for any ailment not included in previous answers, when, in fact, she had. Mr. Justice Trenchard said the case was almost identical withKerpchak v. John Hancock Mutual Life Insurance Co., supra, and he again reiterated and applied the rule that a known untruth represented as a fact, material and relied upon, vitiates the policy. In Shapiro v. Metropolitan Life Insurance Co.,110 N.J. Eq. 287, Vice-Chancellor Bigelow declined to find as a fact that the insured's untruthful statement, that he had not beenattended by a physician within five years, was a conscious falsehood, although he had consulted a physician at the latter's office for a cough, diagnosed by the doctor as due to an asthmatic condition, and death resulted from a tumor which probably produced asthma. The vice-chancellor was led to his conclusion because the insured may have understood "attended" to mean medical attention for sickness at home. In Brunjes v.Metropolitan Life Insurance Co., 83 N.J. Law 296, this variance was held to be entirely immaterial. The decision, it is true, was of a time when representations were stipulated to be warranties, but that is inconsequential, for the elimination of warranties from insurance contracts in 1907 (P.L. p. 133; Comp. Stat. p.2868), did not disturb the rule of law that a knowingly false representation of a material fact, relied upon, vitiates the contract. Eastern District Piece Dye Works v. TravelerInsurance Co., 234 N.Y. 441. In Metropolitan Life InsuranceCo. v. McTague, 49 N.J. Law 587, also in the days of warranties, a negative answer to the question, had the insured been "sick or afflicted with any disease" and the fact that he had had a cold was held not a breach of the warranty but a negative answer to the question whether he had "consulted or been prescribed for by a physician" when, in fact, he had been prescribed for by a doctor for a cold, was held to be a breach. Treating the latter as a representation, minus warranty, the supreme court expressed this dicta: "That representation did not aver a condition of health, or that it *Page 294 
was requisite or proper to consult a physician. It averred that he had not consulted a physician or been prescribed for by a physician. The fact found contradicted this averment, whether the consultation and prescription related to a real disease or an apprehension of disease. Indeed, so material does such a representation seem to be to the contract proposed by the application that, in my judgment, if made falsely and knowingly, it would avoid the contract."
We are not here dealing merely with an equitable fraud, as inCommercial Casualty Insurance Co. v. Southern Surety Co.,100 N.J. Eq. 92; affirmed, 101 N.J. Eq. 738; nor with an untruthful statement resting in warranted honest belief, but with a known falsehood.
It is found that the representation was untrue, untrue to the knowledge of the defendant, that it was material and was relied upon by the complainant to its damage. The policy will be ordered surrendered upon repayment of all premiums. *Page 295