Complainant's bill seeks to have two insurance policies set aside and declared void on the ground of their having been obtained as a result of misrepresentation on the part of the assured. The first cause of action deals with a policy for $1,000 issued on the life of Bertha T. Lodzinski on February 21st, 1933, in favor of her mother, Magdalena Lodzinski. The second cause of action deals with an industrial whole life policy for $584 on the life of Bronislawa Lodzinski, in favor of her executor or administrator, actually issued December 24th, 1934, but dated February 20th, 1928, — which was the date of a prior policy for which this one was substituted.
As to the first cause of action, — the proofs show that there were in fact material misrepresentations in the application for the policy. It is unnecessary to determine whether or not it was requisite for complainant to prove actual, conscious fraud, or whether or not the proofs establish such actual, conscious fraud, — because it is concluded that complainant is barred, under the "incontestability clause" of the policy, from endeavoring to avoid liability thereunder.
This clause provides that the policy "shall be incontestable after it has been in force for a period of two years from its date of issue, except for non-payment of premiums," (and another exception not here material). There is no exception, such as is found in some of these clauses, for either misrepresentation or actual fraud.
The date of issue of the policy was February 21st, 1933. The last day on which the policy might be contested was February 20th, 1935, — Travelers Life Ins. Co. v. Leonard, 120 N.J. Eq. 6,
— as complainant concedes.
Admittedly no contest of this policy was set up or attempted by complainant in any suit or court procedure prior to the *Page 185 
institution of the present suit. Complainant introduced evidence tending to prove that it had, prior to this suit, notified defendant that it denied and contested liability on the policy, and contends that this was an act of contest sufficient to avoid the bar of the clause. This question seems not hitherto expressly decided in this state. There is some authority in other states in support of complainant's contention; but the determination by the New York court of appeals in Killian v. Metropolitan Life Ins.Co., 251 N.Y. 44, that a contest (under the meaning of such a clause) occurs or begins only when the insurer institutes a suit to avoid liability or files answer in a suit brought by the insured or the beneficiary, not only is supported by the weight of authority but is based upon reasoning in which this court concurs. A similar view is obviously inherent in the opinion inNew York Life Ins. Co. v. Steinman, 103 N.J. Eq. 403. That rule therefore is hereby adopted.
The bill in this suit is marked by the clerk "Filed Feb. 21, 1935." There is no other proof as to the date of its filing, except proof that it was, on February 19th, 1935, mailed at Newark by complainant's solicitors addressed to the clerk at Trenton. This is not sufficient to prove that it was in fact received by the clerk prior to February 21st. It is the duty and the practice of the clerk to mark the filing of papers on the date they are actually received by him (assuming them to be in proper condition for filing under the rules of this court). In the absence of clear proof to the contrary, it must be presumed that the clerk did so act.
It was, in former times, the practice of the clerk to mark the filing date of bills as of the date they were placed in the mail or the day before they were actually received by the clerk. This was improper and illegal. A bill cannot be deemed filed until it is actually received by the clerk. Schenck v. Yard,86 Atl. Rep. 81, (not reported in N.J. Eq.).
It must be held that the bill in the present case was filed on February 21st, 1935, and not prior thereto.
It further appears that the subpoena ad respondendum was issued and actually served on defendants on February 20th, 1935. Complainant contends that the suit was therefore *Page 186 
commenced on that day, and that hence the bar of the clause is thereby avoided. This contention is deemed unsound for two reasons.
In the first place, two things are requisite as to the commencement of a suit in chancery, — the filing of the billand the issuance of subpoena. Crawford v. Township ofMaplewood, 105 N.J. Eq. 416, and cases cited. The regular and proper procedure is of course that the bill be first filed and then the subpoena issued and served thereafter. The statute so prescribes, — Chancery act, § 3. The bill prays that process issue. The subpoena, by its terms, notifies the defendant that the bill has been filed and requires the defendant to answer the bill so filed. The cases cited hold that a suit is not commenced by the mere filing of the bill, — is not commenced unless and until subpoena issues; but they do not hold that suit is commenced by the issuance of subpoena, ipso facto, irrespective of whether or not bill had then been filed. The statement inHermann v. Mexican Petroleum Co., 85 N.J. Eq. 367, at 370,
that the issuance of the writ is the commencement of the suit, must be read in connection with the fact also therein mentioned, of the statutory requirement that bill be filed before the issue of process. So considered, the holding obviously is that suit is not commenced by the filing of the bill, but by the issuance of subpoena thereafter; and such is the statement in DelawareRiver Quarry, c., Co. v. Mercer Freeholders, 88 N.J. Eq. 506,at 511; Lehigh Valley R.R. Co. v. Andrus, 91 N.J. Eq. 225, at229; W.J. S.S.R.R. Co. v. Cape May Co., 100 N.J. Eq. 181, at184; Bittles v. West Ridgelawn Cemetery, 108 N.J. Eq. 357, at358. (The additional requisite, of prompt, bona fide effort to serve the process, is not involved in the instant case.)
True it is that the statutory requirement that bill be filed before issuance of process is deemed directory, not mandatory, and that issuance of process before filing the bill is deemed a mere technical irregularity which may be waived by defendant, —Crowell v. Botsford, 16 N.J. Eq. 458; Berenbroick v.Hofstetter, 93 N.J. Eq. 542, — and which in fact was waived by defendants in the instant case by the filing of answer without objection to the irregularity. But it by no means follows *Page 187 
therefrom that suit is to be deemed commenced by the issuance of subpoena without any bill on file, any more than it is deemed commenced by the filing of the bill without subpoena issued. In the latter case bill stating complainant's cause of action has been filed, but nothing has been done to call it to defendant's attention; in the former case defendant has been called on to answer complainant's bill but no bill or anything else has been filed to inform defendant as to what he is called upon to answer. In such case how can it be held that suit has been commenced?What suit has been commenced, — what is the cause of action which has been instituted? At the time he issues process, a complainant might have drawn, and intend to file, a bill setting forth one cause of action, but change his mind after issuing process and file a bill setting an entirely different cause of action. Surely he cannot be said to have commenced a suit until he has filed his statement as to what that suit is.
Moreover, it would clearly appear inequitable to permit a complainant who has proceeded irregularly and in contravention of statutory direction, thereby to obtain a better position than he would have had if he had proceeded regularly and in obedience to the statute.
The true rule must be that suit in chancery is not commenced prior to the time when both things, (in whichever order), have occurred, — the issuance of process and the filing of the bill.
In the second place, even if it were true that a suit in chancery is commenced at the time of issue of process notwithstanding the bill be not yet then filed, it does not follow that a contest of liability under the policy is thereby begun. It is difficult to understand how such a contest can be deemed begun until it is in fact begun, — until there has been filed in the suit some statement that such liability is denied and contested. When the contest occurs in a suit brought by the insured or the beneficiary, the contest is deemed not to occur or begin until the filing of the answer setting up such contest.Killian v. Metropolitan Life Ins. Co., supra. The filing of the answer is not related back to the commencement of the suit, in fixing the time when the contest has occurred or *Page 188 
begun; nor even back to the entry of appearance by the defendant, — such appearance does not necessarily imply a denial of liability under the policy. In other words a contest does not occur until it occurs, — until something is filed in the suit constituting or setting forth a denial of such liability.
Complainant therefore did not contest its liability under the policy until February 21st, 1935, — hence not until after the two-year period had expired. By force of the contractual clause its attempted contest after that period cannot be entertained or considered. As heretofore noted, the clause in this policy contains no exception permitting contest on the ground of fraud. The clause is therefore effective to prevent complainant from alleging that the policy was obtained by representation untrue in fact or even by actual fraud. Drews v. Metropolitan Life Ins.Co., 79 N.J. Law 398; approved by the court of errors and appeals, Prudential Ins. Co. v. Connallon, 108 N.J. Eq. 316,at 318, 319.
The bill must be dismissed insofar as its first cause of action is concerned.
As to the second cause of action, — it is established and not controverted that on or about February 20th, 1928, complainant company issued an endowment policy, dated on that day, for $160 on the life of Bronislawa (Bertha) Lodzinski. Toward the end of 1934 the insured and her mother desired to cancel this policy and obtain the cash surrender value thereof. Through the persuasion of the agents of the company they were induced to, and did, take out in place of the endowment policy a whole life policy on the same life, payable to the executor or administrator of the insured.
The new policy was for a greater amount but involved a lesser weekly premium. It was in fact issued by the company on December 24th, 1934; but bears the same date as the old policy, February 20th, 1928. The old policy was canceled and after deducting from the cash surrender value thereof a sum equivalent to the total premiums which would have been paid under the terms of the new policy from its date (the date of the old policy) down to that time, the balance was paid over to the Lodzinskis. *Page 189 
The new policy contains a provision that the company may declare the policy void
1. "If the insured * * * is not in sound health the date hereof" or
2. "If the insured has * * * within two years before the date hereof, been attended by a physician for any serious disease or complaint" or
3. "Before said date has had any pulmonary disease," c.
The proofs tend to show that contingencies 1 and 3 happened, and do show that contingency 2 happened, — if the words "the date hereof" are to be construed, (as complainant contends they should be) as referring to the date the new policy was in fact issued. Those words cannot however be so construed. If there were any ambiguity or doubt, it must be resolved against the company, —Travelers Ins. Co. v. Leonard, supra, and cases cited. But in this case there is not even any ambiguity. The execution clause states the execution to be "on the date hereof as stated on page 4." The date stated on page 4 is February 20th, 1928. The policy itself therefore evidences that "the date hereof" shall be understood to mean February 20th, 1928. There is no proof that any of the three contingencies happened with reference to that date; and complainant is not entitled to avoid the policy on that ground.
An application for the new policy was signed by the insured, and the new policy was issued by the company on the basis thereof. This application contained certain representations relating to the health of the insured, and concludes with the following clause:
"I hereby declare that the statements recorded above are true and complete and I agree that any misrepresentation shall render the change of policy voidable at the option of the Company, and that if the change provides an increased amount of insurance, it shall not in any case be effective unless upon delivery of the policy I shall be alive and in sound health."
The evidence tends to show that the insured was not in sound health at the time the new policy was delivered; but it is not perceived that this can avail complainant. The new policy contains a provision, (as is required by the statute — *Page 190 
see P.L. 1925, p. 436), that "this policy constitutes the entire agreement between the company and the insured."
The policy, on its face and under its terms as expressed therein, constitutes an effective contract of insurance. To hold that under certain contingencies it is to be deemed not to be such an effective contract, by reason of a prior agreement which is not set forth and contained in the policy itself, would obviously be to vary the terms of the policy, and to do violence both to the express provision of the policy and the purpose and intent of the statute. It was open to the company, if it desired to have the benefit of such a provision, to have incorporated it in the policy, — as is frequently done, and as was done, for instance, in the policy involved in Prudential Ins. Co. v.Connallon, 106 N.J. Eq. 251, see p. 252. Not having done so, it cannot have the benefit thereof.
The proofs show that there were certain representations over the signature of the insured, in the application for this policy and which were material in inducing the company to issue it, which were untrue in fact, — such as, for instance, that the insured was then in sound health and had no physical infirmity; that since the issuance of the old policy, she had had no illness, nor consulted any physician, nor been under treatment in any hospital. Complainant contends that by reason thereof, even if such misrepresentations were not knowingly fraudulent, it is entitled to have the policy set aside.
While it is true that, as has been established by a long line of decisions, rescission may be had in equity upon proof of reliance upon material representations untrue in fact, without proving conscious or intentional fraud, it is equally true that it is also definitely established by the determination of the appellate court in Metropolitan Life Ins. Co. v. Sussman,109 N.J. Eq. 582, that where a complainant insurance company, seeking to set aside a policy on the ground of misrepresentation, alleges in its bill that the representations were knowingly false and fraudulent in purpose, it is required to prove that allegation or have its bill dismissed. See also, United Life,c., Ins. Co. v. Winnick, 113 N.J. Eq. 288, at p. 290, bottom. *Page 191 
It is contended by defendants, — and denied by complainant, — that the cause of action set forth in the present bill, under the second cause of action, is based on actual fraud. For the purposes of the determination of this case, it will be assumed, — although it is not so decided, — that the bill does require complainant to prove actual fraud.
The defendants further contend that the complainant is barred from denying liability under this policy, by reason of the "incontestability" clause therein. That contention is not tenable, however, inasmuch as the incontestability clause in this policy expressly excepts contests for non-payment of premiums,fraud, or misstatement of age.
The application for this new policy was made by the insured on December 8th, 1934. The proofs establish, and are not controverted, that she was at that time in the last stages of tuberculosis; that she died therefrom about five weeks thereafter on January 17th, 1935; that obviously, therefore, she must have known at that time that she was in an advanced stage of tuberculosis; that in fact she did know that she had tuberculosis and had been suffering from it for more than a year past, because on November 4th, 1933, she was admitted to the Elizabeth General Hospital and remained there under treatment for six days, and at that time she had chronic tuberculosis and told the physician that she had spat blood, and was told by the physician that she had tuberculosis and was advised to go to a tuberculosis sanitarium, but that she declined to do so and left the hospital against the advice of the physicians; that the physicians again saw her at the hospital about a year later, in December, 1934, and that her condition at that time was very much worse.
The statements which she made in the application for the policy therefore were untrue, and she knew that they were untrue. The proofs therefore show that she procured this new policy, for an increased amount of insurance, by fraud, — as the result of representations made in the application for the purpose of obtaining the new policy, which representations were untrue and known by her to be untrue at the time she made them. Moreover the procurement of the policy would have been fraudulent if she had not made these untrue *Page 192 
statements because of her suppression and concealment of the fact that she was in advanced stage of tuberculosis, as she well knew, and of course she also must have known that no insurance company would write insurance or increased insurance for a person in such condition.
The materiality of the fraudulent misrepresentations and suppression is obvious and was proven, and indeed was admitted by counsel.
The defendants seek to avoid the effect of such fraudulent misrepresentation and concealment because of the testimony by the soliciting agent that the answers to the questions in the application for the policy were written in by him and not by the insured; that he did not read the questions to the insured and she did not give him the answers; that after he had written in the answers, he gave her the application and asked her to sign it, and that she signed it without reading the application or any of it.
This, however, cannot avail the defendants. The proofs show that the insured was perfectly able to read and write English, and that she had full opportunity to read the application before signing it if she had desired to do so; and there is no proof nor intimation that her failure to read the application was due to any fraud on the part of the agent or any act, conduct or request by him whatever.
Under those circumstances testimony that she did not read the application which she signed cannot be heard or considered. In the absence of fraud, she is conclusively presumed to have read the document which she signed. Fivey v. Pennsylvania R.R. Co.,67 N.J. Law 627; Equitable Life Assurance Society v. Gutowski,119 N.J. Eq. 181. Moreover, even if the testimony (that she did not read or know the answers in the application which she signed) were admissible and were believed, she was still nevertheless guilty of making a knowingly false statement and representation to the complainant in and by this application.
A policy of insurance "will be avoided for a misrepresentation in the application, made a part thereof, if the misrepresentation be material and fraudulent; that is to say if it be the statement of something as a fact which is untrue and *Page 193 
which the insured stated, knowing it to be untrue and with an intent to deceive, or which he stated positively as true withoutknowing it to be true, and which had a tendency to mislead; such fact in either case being material to the risk." (Italicization added.) This the law as stated by the appellate court inKerpchak v. John Hancock Mut. Life Ins. Co., 97 N.J. Law 196,at 198, — a case at law in nowise involving the equitable principle of fraud by misrepresentation resulting from honest mistake. It is repeated in Locker v. Metropolitan Life Ins.Co., 107 N.J. Law 257, and in Hahn v. Metropolitan Life Ins.Co., 116 N.J. Law 126. It is definitely settled, therefore, in this state, (and such also is the overwhelmingly general rule), that it is just as much an actual fraud, — just as much a knowingly false statement, — for a man to state that he knows a thing to be true when in fact he knows that he does not know whether it is true or not, as for him to state as true any other fact which he knows to be untrue.
Of course where a man answers "Yes" to the question "Are you now in good health?", he is not guilty of actual fraud, he makes no knowingly false statement, if he honestly believes himself to be in good health, — even though he be in fact, though unknown to himself, suffering from a mortal disease. Prahm v. PrudentialIns. Co., 97 N.J. Law 206; Shapiro v. Metropolitan Life Ins.Co., 110 N.J. Eq. 287; affirmed, 114 N.J. Eq. 378. On the other hand he would be guilty of making a knowingly false statement if the facts were that he had just been examined by his physician and been told that he might or might not be suffering from cancer and that it would require further tests to ascertain the fact definitely one way or the other. In such a case he would know
that he did not know himself to be in good health, and his statement would therefore be false and fraudulent.
In the instant case, therefore, assuming that the insured did not know what answers had been written in by the agent, she nevertheless knew that she was making an application for life insurance. She knew therefore that in and by such an application statements and representations were made to the insurance company, as representations by herself, which were *Page 194 
material and on which the company would rely in determining on whether or not to issue the policy, — for she had previously made applications on at least seven or eight other occasions for insurance policies. She knew therefore that in signing the application she was representing to the insurance company that the statements in the application were true statements of her own knowledge and belief; and she knew that that representation was false because she knew that she did not know what those answers were that had been written in.
Furthermore, as has already been noted, she was guilty of fraudulent concealment, even aside from her guilt of fraudulent false statements made in the application.
It is difficult to avoid concluding that the soliciting agent must also have been a party to this fraudulent attempt to obtain increased insurance, for her physical condition must have been obvious to him.
The defendants further contend that it must be concluded that the insured was not guilty of fraud, because of the testimony that the insured's mother, prior to the application for the new policy, sought to surrender and obtain the cash surrender value of the old policy for $160, and that it was only as the result of argument and persuasion by the soliciting agents that the insured and her mother concluded to apply for the new policy of increased amount, but of lesser premium, and receive and obtain a part instead of all of the cash surrender value of the old policy. This testimony by no means requires the conclusion which defendants contend. The vast majority of all applications for policies are made as the result of solicitation and argument by soliciting agents; and the result of the solicitation by the agent in the instant case was simply to lead the insured and her mother to the decision to make application for the new policy. It in nowise controverts the fact that the insured knew that the new policy issued would be for an increased amount, and would be issued upon the basis of the statements and representations made in the application, and that those statements were knowingly false and that she fraudulently concealed from the company the knowledge as to her physical condition. *Page 195 
It is further contended by the defendants that complainant cannot use the false statements in the application as the basis of avoiding liability under the new policy, because no copy of the application was attached to the policy as issued. This contention, however, is untenable. The provision that the policy contains the entire contract and that nothing else is to be incorporated therein unless endorsed upon or attached to the policy, is not here involved. The issue here is not any question of breach or non-performance of terms of the policy; the issue here is as to whether or not the policy which was issued, was procured to be issued by the fraud of the insured.
It is further contended by the defendants that the application for the policy is inadmissible in evidence, under the 4th section of the Evidence act. This contention is also without weight. The section of the Evidence act in question uses the word "testimony," not the word "evidence." The application is evidence, but not testimony; and is perfectly competent and admissible. Rogers v. McKenna, 96 N.J. Eq. 386; Bruen v.Spannhake, 118 N.J. Eq. 134.
So also as to the objection made to the testimony by the witness Janasie, an agent of the complainant company. This witness was not a party to the suit, and his testimony is not excluded under the section of the Evidence act in question. Indeed at the time of the hearing, he was not employed or connected with the complainant in any way. Moreover, defendant must be deemed to have waived any objection to his testimony by reason of having subsequently examined him, and elicited testimony from him on her own behalf.
One other contention by defendants may be mentioned, — that notice of rescission and tender of payment of the amount due under the old policy was not given prior to the commencement of the suit.
It appears that the insured died January 17th, 1935, and that complainant's bill on the first cause of action was filed against the defendant in her individual capacity as beneficiary on February 21st, 1935; that the new policy in the second cause of action was payable to the executor or administrator of the insured and that no executor or administrator had been appointed at the time of the filing of the original bill, and *Page 196 
that the defendant was not appointed as such administrator until a comparatively short time before the filing of the amendment to the bill which set up the second cause of action, and that at the time such amendment was filed, some four months after the filing of the bill in the first cause of action, no answer had as yet been filed by the defendant to the original bill. The situation in equity is different from that in a suit at law. At law the party must depend upon establishing the fact that a rescission had been made by notice and tender; in equity this complainant does not rest upon a rescission theretofore affected, but seeks to have this court decree a rescission.
The bill contains a tender of the requisite payment; moreover in the course of the trial the statement was made by counsel for the complainant in a colloquy between the court and both counsel, that such tender had been duly made; and defendants' counsel did not in any wise deny or attempt to deny or controvert this. His tacit acquiescence must needs be deemed an admission of due tender.
Complainant is entitled to decree on the second cause of action; with provision of course for the payment by complainant to the defendant, in accordance with its tender, of the amount which would have been payable on the original policy.
No costs will be allowed to either party; each has been successful in part.
Defendant counter-claimed seeking decree for the payment of the amount due on these policies. It is doubted that this court has jurisdiction to make a money decree on such a counter-claim for a legal cause of action. See Rosenberg v. Century-PlainfieldTire Co., 110 Atl. Rep. 516; Shaw v. Beaumont Co., 88 N.J. Eq. 333.
However, the question is doubtless unimportant. Presumably the complainant in view of the determination herein will not seek to compel defendant to sue at law to recover the amount due on the policy in the first cause of action. *Page 197